109 N.J. Super. 125 (1970)
262 A.2d 431
IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF GEORGE BLUM TO PRACTICE CHIROPRACTIC IN THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1970.
Denied February 24, 1970.
*127 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Dominic G. Bocco argued the cause for appellant (Messrs. Sandone & Bocco, attorneys).
Mrs. Virginia Long Annich, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by George Blum, a chiropractor, from a final decision of the State Board of Medical Examiners (Board) which revoked his license to practice chiropractic within the State.
Appellant was charged with violation of N.J.S.A. 45:9-16(d) which provides that the Board may revoke a license to practice chiropractic upon proof that the holder of the license has advertised fraudulently. At the hearing before the Board, the State introduced in evidence 24 advertisements which the appellant had placed in New Brunswick newspapers between October 1, 1967 and April 9, 1968. Each advertisement contained the appellant's name, photograph, address, office hours, telephone number and an article allegedly dealing with the practice of chiropractic.
*128 One of the advertisements bore the heading, "High blood pressure  and its correction," and stated that "Chiropractic is a normal procedure to adopt to reduce this high blood pressure naturally and being reduced naturally, it stays reduced." Dr. Martino, a chiropractor, testified that the statement was "gross misinformation * * * too gross to be accurate * * * not academically correct * * * not clinically correct." Dr. Cianciulli, also a chiropractor, characterized it as being "physiologically incorrect."
Another advertisement headed, "Do you need drugs with your adjustments?" read: "Any drug you are required to use for any reason should be reported to your chiropractor and he will give specific instructions as to continuance of such a drug." Both Dr. Martino and Dr. Cianciulli indicated that the statement was a misrepresentation. Dr. Martino said a chiropractor is not trained in the use of drugs and not qualified to advise as to such use. Dr. Cianciulli testified that drug therapy is the practice of medicine which chiropractors are not qualified to practice and that the statement was misleading.
Sylvia Swidler, an inspector of the Division of Professional Boards, testified that she went to the appellant's office and told him she was suffering from several ailments (all of which were fictitious). She asked for the free consultation promised in one of his advertisements. She testified he did not provide her with a "free consultation" but said he could not tell or do anything for her unless he took an X-ray of her spine. He charged her $20 for the X-ray. On her second visit he said her problems stemmed from pressures on the spine; that she required 18 weeks of treatment, three times a week, for a test period and that total correction would take 2 1/2 years. He gave her a brochure indicating that maximum correction would result with her cooperation and showing a tombstone reading, "Rest in Peace," for failure to cooperate.
The Board found as a fact that 16 of the advertisements contained statements which were false, deceitful, and in *129 some instances injurious to the public. It adjudged appellant guilty of advertising fraudulently in violation of the statute and revoked his license to practice chiropractic.
Appellant raises three grounds of appeal. He contends: (1) he was denied his due process right to a hearing before an impartial tribunal; (2) the Board failed to prove or make a specific finding of fact that he made the misrepresentations with a fraudulent intent, and (3) the Board had no authority to charge or find him guilty because the advertisements contained statements which were allegedly derogatory of the medical profession.
Appellant's argument that he was denied a due process right to a hearing before an impartial tribunal is based on the claim that N.J.S.A. 45:9-16 permits a merger of the functions of investigator, prosecutor and judge in the State Board of Medical Examiners. There are two answers to this argument. First, even if the contention were true, it is not a violation of due process. See State Board of Medical Examiners v. Kempkes, 10 N.J. Misc. 838 (Sup. Ct. 1932), and concurring opinion of Judge (now Justice) Brennan in In re Larsen, 17 N.J. Super. 564, 575 (App. Div. 1952). Secondly, the facts do not support appellant's argument that there was a merger of such functions. Here the investigation was made by an inspector of the Division of Professional Boards of the Department of Law and Public Safety, the prosecution was conducted by a deputy attorney general, who is not subject to the Board in any respect, and the case was heard and determined by the Board.
We also find no merit to appellant's second point. While the violation of N.J.S.A. 45:9-16(d) requires proof that the proscribed fraudulent advertising was intentionally false, calculated to mislead or deceive the public (cf. Abelson's Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 422 (1950)), such proof may be discovered, as other mental states are, in the evidence of the accused's conduct in the surrounding circumstances. State v. Costa, 11 N.J. 239, 247 (1953). Such proof may be found where it appears that *130 the accused believes his statement to be false or it is made without any belief as to its truth, or with reckless disregard whether it be true or false, or when it is made by one who is conscious that he has no sufficient basis of information to justify the statement. Prosser on Torts, § 102, at 715-716.
Here the evidence showed that some statements in appellant's advertisements were false in fact while others were misleading to the public. As a chiropractor appellant knew that the services he could render to a patient were limited by his license to practice. He was also well aware of his limited knowledge of the practice of medicine. Despite such limitations he asserted facts in the advertisements as if they were of his own knowledge, or implied that he had such knowledge, when he was well aware he would be so understood by members of the public and knew that he did not in fact know whether such statements were true. We are satisfied and hold that the State proved that such advertisements were inserted by appellant with an intent to deceive the public.
The Board's opinion indicates it clearly recognized that a finding of fraudulent intent on appellant's part was essential to prove a violation of the statute. After reviewing in detail a substantial part of the evidence the Board made specific findings of fact characterizing statements contained in Blum's advertisements as "false and deceitful," "injurious to the public," "fraud," "false and misleading" and, in one instance, "Dr. Blum practiced fraud and deception on the public." In conclusion it said that appellant was "guilty of advertising in a false, deceitful or delusive manner, or in a manner calculated to lead the public astray or cause error, which advertising constitutes fraudulent advertising." Implicit in the Board's conclusions are findings that the appellant knew that statements in the advertisements were false and caused them to be published with an intent to deceive and to perpetrate a fraud upon the public.
In his third point appellant challenges the Board's finding that nine advertisements were derogatory to the *131 practice of medicine and false, deceiving and injurious to the public. He argues that N.J.S.A. 45:9-16(d) does not prohibit chiropractic claims of superiority over the practice of medicine. The argument lacks substance. The Board found such advertisements to be fraudulent because they were calculated to persuade the public to avoid medical attention and treatment in cases where such treatment was needed and which were beyond the limited scope of the practice of chiropractic. We have examined the advertisements and conclude that the findings of the Board are supported by substantial evidence.
Affirmed.