117 N.J. Super. 95 (1971)
283 A.2d 750
DATA ACCESS SYSTEMS, INC., A NEW JERSEY CORPORATION, RESPONDENT-APPELLANT,
v.
THE STATE OF NEW JERSEY, BUREAU OF SECURITIES, GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY AND JOSEPH F. KRUPSKY, CHIEF, BUREAU OF SECURITIES, PLAINTIFFS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1971.
Decided November 9, 1971.
*97 Before Judges SULLIVAN, LEONARD and CARTON.
Mr. John B.M. Frohling argued the cause for appellant (Messrs. Sharkey & Brandt, on the brief).
Mr. Charles Parker, Deputy Attorney General, argued the cause for respondents (Mr. Joseph Charles, Deputy Attorney General, on the brief; Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by SULLIVAN, P.J.A.D.
This appeal, in the main, involves the issue of whether the State of New Jersey, acting through its Bureau of Securities, has jurisdiction over an offering of capital stock by a New Jersey corporation when such offering is covered by a registration statement filed with the Securities and Exchange Commission under the Federal Securities Act of 1933.
Data Access Systems, Inc., a New Jersey corporation (Data), was organized in June 1969. Its principal office is in Dover, New Jersey, and it is engaged in the assembly of electronics communication equipment relating to computers. After its original organization Data issued additional shares of its stock on a "private placement" basis. As *98 of February 28, 1971 it had 452,400 shares issued and outstanding. Its total assets as of that date, as shown by its balance sheet, were $320,383.
In the early part of 1971 Data proposed to issue an additional 200,000 shares of its capital stock for $3.50 per share. A registration statement was filed with the Securities and Exchange Commission. On February 16, 1971 copies of the registration statement and prospectus were filed with the New Jersey Bureau of Securities (Bureau). (Regulation 13:13-52 of the Bureau provides for written notice of the federal filing as a condition of qualifying the security for offer and sale in New Jersey.)
Rejecting the contention of Data's counsel that the Bureau had no jurisdiction over a security offering registered under the federal act, the Chief of the Bureau ruled that the proposed issue, so far as it involved an offer from or within the State of New Jersey, was subject to the New Jersey Uniform Securities Law (1967), N.J.S.A. 49:3-47 et seq. Ultimately the Bureau issued a final order of cease and desist against the issuance or sale of the proposed stock from or within the State of New Jersey. The order was bottomed on the Bureau's findings that the offering involved unreasonable amounts of promoters' participation, contrary to N.J.S.A. 49:3-64(a)(vi). The Bureau gave as an added reason that Data, from July 1, 1969 to July 1970, engaged in the sale of securities in this State without complying with New Jersey securities laws, evidencing a disrespect and disregard therefor.
Data appeals on the following grounds: (1) the Bureau had no jurisdiction to pass on the substance of a federally registered offering; (2) even assuming the Bureau had jurisdiction in the instant matter, it improperly applied principles of administrative law in reviewing the matter of unreasonable promoters' participation; (3) Data's alleged sales of unregistered securities in 1969-1970 is not a proper legal basis for the Bureau's order.
*99 Preliminarily we conclude that the 1969-1970 sale of securities should not operate to permanently bar Data from future sale of securities in this State. The record indicates that during the period in question some 125,000 shares were sold to approximately 23 persons in New Jersey. On its face it would appear that these securities should have been registered under the New Jersey Securities Law. However, there are mitigating circumstances and there does not appear to have been a deliberate attempt to circumvent the law. We think the public interest will be protected and justice satisfied by alternatives such as requiring Data to offer to buy back such stock from original subscribers at cost price, the offer to remain open for a limited period of time.
The basic issue, as heretofore noted, is the jurisdiction of the Bureau to make a substantive review of a federally registered offering of securities. Data does not contend that Congress has preempted this field by its enactment of the Securities Act of 1933. Rather, Data argues that the limited Uniform Securities Law adopted in New Jersey indicates a legislative intent to exempt federally registered offerings from state control. We do not agree.
Regulation of the issuance of securities under the Federal Securities Act of 1933 is basically in the area of requiring full and fair disclosure via registration statement and prospectus. The federal act specifically permits the exercise of concurrent jurisdiction by state securities regulatory agencies. 15 U.S.C.A. § 77v.
The Uniform Securities Act, adopted in New Jersey with certain modifications hereinafter referred to, provides more extensive investor protection than the federal act. It not only requires full and fair disclosure but empowers the Chief of the Bureau of Securities to issue a stop order suspending the effectiveness of a registration statement covering a security if he finds that order is in the public interest and that any one of certain irregularities, specified in N.J.S.A. *100 49:3-64, exist. Unreasonable promoters' profits or participation is listed as one of the grounds for a stop order.
The omission of section 303 of the Uniform Act from the New Jersey act, contrary to appellant's contention, does not indicate a legislative intent to exempt federally registered securities from the provisions of the New Jersey act. Section 303 specifically provides for coordinate state registration of a federally registered security. However, its omission from the New Jersey act merely excuses the issuer from the duplicitous requirement of dual registration. As heretofore noted, the New Jersey Bureau of Securities' regulations require written notice of the federal filing. In this case Data filed with the Bureau copies of SEC registration statement and prospectus. The Bureau Chief used the information contained in those documents, as well as matters brought out at the hearing, as the basis for his findings and his final order of cease and desist.
Appellant argues that indicative of a lack of jurisdiction is the Bureau's own Regulation 13:13-52, which prescribes only minimal standards for notifying the Bureau of an offering covered by a registration statement filed with SEC.
We do not read the regulation in the same light. It provides that offerings of securities which have been filed with SEC may be qualified for offer and sale within or from New Jersey by the filing with the Bureau Chief of a written notice setting forth (a) the name of the issuer, (b) the filing with the SEC, and (c) the name and address of the broker-dealer or underwriter who is to effect sales within or from New Jersey. The notice is to be accompanied by a copy of the prospectus or offering circular.
It is to be noted that the regulation uses the expression "may be qualified" rather than "shall be qualified," indicating a reservation of control over whether or not the offering becomes qualified in New Jersey. Moreover, there would be no point in requiring an issuer to file a written notice containing the information specified and to submit the material *101 required, if the Bureau had no jurisdiction to utilize the same for investor protection.
Nor does N.J.S.A. 49:3-60 support appellant's contention. Consistent with the omission of section 303 of the Uniform Act, this statutory provision so far as relevant to the present discussion, dispenses with the need for a separate state registration statement where there has been a filing with SEC. However, this section does not exclude Bureau of Securities' jurisdiction where there has been a registration statement filed under the Federal Securities Act of 1933. The need for protection of investors in this State is just as great whether the proposed offering is intrastate or interstate.
We are informed that few security issue filings with the Bureau involve purely intrastate offerings. Since the New Jersey act regulates in a comprehensive way the issuance of securities in this State, whereas the federal act does not, it would frustrate the legislative purpose of providing extensive investor protection if state jurisdiction could be thwarted by the device of federal registration. In short, we conclude that the Bureau may exercise full jurisdiction over a federally registered issue insofar as it involves the offer or sale of a security from or within this State.
Appellant also argues that, assuming the Bureau has power of substantive review, it improperly applied principles of administrative law in reviewing the matter of unreasonable promoters' participation. Specifically, it is urged that the term "unreasonable promoters' participation" is so broad that basic fairness requires promulgation of a rule defining the term. In the same vein it is further argued that failure to promulgate such a rule violates the New Jersey Securities Law as well as the Administrative Procedure Act.
We find no substance in this argument. The present extensive control over the offering or sale of a security in this State, vested in the Bureau, was added to the New Jersey *102 Uniform Securities Law in 1967. The Bureau must be afforded a fair opportunity, based on experience, to evolve statutory standards within the framework of the law. As was stated by the United States Supreme Court in Securities and Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947):
Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforseeable situations.

* * * * * * * *
[T]he agency may not have had sufficient experience with a particular problem to warrant rigidifying its tentative judgment into a hard and fast rule. Or the problem may be so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. In those situations, the agency must retain power to deal with the problem on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency. [at 202-203, 67 S.Ct. at 1580]
We recognize that continued experience with the provisions of N.J.S.A. 49:3-64 may develop guidelines which should then be embodied in appropriate regulations. Cf. R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 41 N.J. 3 (1963). For the present we are satisfied that the Bureau approach the problems on a case-by-case basis.
Appellant does not seriously challenge the sufficiency of the facts on which the Bureau's finding of unreasonable promoters' participation is based. The proposed offering price is more than ten times present book value. Net proceeds of the offering would increase the total corporate assets from $320,383 to $925,000, an increase of some 200%, but the new shareholders who would contribute this massive injection of capital would only have a 30% stock ownership. Immediately upon consummation of the proposed offering the present stockholders would have the book value of their stock increased from $0.31 a share to $1.27 a share, *103 while the new purchasers would hold stock having a book value of $1.27 per share for which they paid $3.50 per share, a dilution of more than 60%.
While it may be difficult to define "unreasonable promoters' participation" in the abstract in precise terms, we are satisfied that the enumerated facts substantially support the Bureau's findings and conclusions as to such participation in this case.
Appellant charges that the Bureau action is illegal because it has failed to apply the standards it uses in a consistent manner. Reference is made to Bureau action on three offerings by other New Jersey corporate businesses. Details of the various offerings have been set forth in a comparison chart in an effort to support appellant's contention that it has not received equal treatment from the Bureau.
We conclude that no invidious discrimination has been shown. Corporate offerings cannot be compartmentalized in the manner suggested by appellant. Each filing must be considered on its individual merits, considering all the relevant circumstances which necessarily vary from offering to offering and from business to business. The type of business, its age, corporate structure, operating experience, type of assets, are only a few of the relevant considerations. We must recognize the expertise of the Bureau in this area and the necessity of using a flexible approach to the matters that come before it. The rigid application of standards suggested by appellant would deny to the Bureau the discretion so essential to proper application of its expertise.
Affirmed.