DATA ACCESS SYSTEMS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, BUREAU OF SECURITIES, GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND JOSEPH F. KRUPSKY, CHIEF, BUREAU OF SECURITIES, DEFENDANTS-RESPONDENTS.

Argued December 18, and 19, 1972—Decided June 5, 1973.

*Mr. John B. M. Frohling* argued the cause for appellant (*Mr. John B. M. Frohling,* attorney; *Mr. Donald P. Sharkey and Mr. Charles H. Brandt,* on the brief).

*Ms. Virginia Long Annich,* Deputy Attorney General, argued the cause for respondents (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Ms. Annich,* of counsel and on the brief; *Mr. Charles R. Parker,* Deputy Attorney General, on the brief).

*Mr. Robert P. Hazlehurst, Jr.,* argued the cause for *Amicus Curiae,* Investment Bankers Association of America (*Messrs. Pitney, Hardin and Kipp,* attorneys; *Mr. Donald B. Kipp and Mr. Hazlehurst,* of counsel).

The opinion of the Court was delivered by

MOUNTAIN, J. The issue here presented is whether the Division of Consumer Affairs[1] has authority by virtue of the Uniform Securities Law (1967), *N. J. S. A.* 49:3–47, et seq., to review the merits of a federally registered securities offering where sales of securities in this State are contemplated.

By order entered June 23, 1971 the Division directed plaintiff, Data Access Systems, Inc. (Data) to cease and desist from selling or offering for sale in New Jersey a proposed common stock issue which had been registered with the Securities and Exchange Commission (SEC) under the Securities Act of 1933, 15 *U. S. C. A.* § 77a, et seq. On appeal the agency's ruling was affirmed by the Appellate Division, 117 *N. J. Super.* 95 (1971). Immediately there-

---

[1] By the terms of the Consumer Affairs Act of 1971 (*L.* 1971, *c.* 134) all the functions, powers and duties of the former Bureau of Securities in the Department of Law and Public Safety were transferred to the Division of Consumer Affairs in the same department. The statute took effect May 6, 1971 and is now *N. J. S. A.* 52:17B–125.

after the Securities Industry Association (then known as the Investment Bankers Association of America)[2] sought leave to appear before the Appellate Division as *amicus curiae* and to file a brief in support of an application for a rehearing. Leave to appear was granted but the petition for rehearing was denied. We then granted the Association leave to proceed before this Court as *amicus curiae* and . granted the petition for certification presented jointly by Data and the Association. 60 *N. J.* 283 (1972).

Data is a New Jersey corporation organized in June 1969 and engaged in the assembly of electronic communications equipment relating to computers; its principal office is located in Dover, New Jersey. Wishing to issue and sell additional shares as a public offering, on February 12, 1971 Data filed with the SEC a registration statement covering a proposed offering of 200,000 shares of its common stock to be sold through underwriters. On February 16, 1971 Data filed with the then Bureau of Securities a notification of intent to sell securities within this State, accompanied by a copy of the prospectus which had been included in the registration statement filed with the SEC. This was done in compliance with the Bureau's Regulation 13:13–52,[3] which

---

[2] The members of the association consist of about 630 investment banking firms having some 2,100 registered branch offices throughout the United States and Canada. The member firms underwrite, deal in and act as brokers for all types of securities.

[3] This regulation, now *N. J. A. C.* 13:13–10.1, reads as follows:
*Notification of interstate securities offerings*
(a) Offerings of securities which have been filed with the Securities and Exchange Commission pursuant to the provisions of the Securities Act of 1933 and the rules and regulations thereunder, or which are not subject to or exempt from the registration requirements of the Securities Act of 1933 and the rules and regulations thereunder, other than by reason of Section 3(a) of such Act and the rules and regulations under said Section 3(a), may be qualified for offer and sale within or from New Jersey by the filing of a written notice to the Bureau Chief setting forth:
1. The name of the issuer;

purported to require such notification and filing as a pre-requisite to qualification for offer and sale within this state. On May 25, 1971 the agency issued an order enjoining the sale of the shares in New Jersey, and following a hearing, entered the cease and desist order of June 23, 1971, mentioned above. This action was predicated principally upon a finding that the offering involved unreasonable amounts of promoters' participation contrary to *N. J. S. A.* 49:3–64 (a) (vi).

The decision of the agency rested upon a determination that it had authority to make a substantive review of the terms of the proposed offering. The appellants here contend, as they did below, that the New Jersey statute makes no provision for such a review where the proposed offering, as is here the case, has been registered with the SEC under the Securities Act of 1933. The question is one of statutory interpretation.

The Uniform Securities Law (1967), *N. J. S. A.* 49:3–47, et seq.,[4] was intended to supersede, with a single exception,[5] all earlier legislation dealing with the same subject matter. *N. J. S. A.* 49:3–48. Although it was modeled upon the Uniform Securities Act which had been approved by the National Conference of Commissioners on Uniform State Laws, 7 *Uniform Laws Annotated-Business and Financial Laws* (Master ed.) 691, it departs from the latter in a number of important respects. Especially significant to the present inquiry is a comparison of those sections of

2. The filing with the Securities and Exchange Commission;

3. The name and address of the broker-dealer or underwriter who is to effect offers and sales on behalf of the issuer within or from New Jersey.

(b) Such notice is to be accompanied by a copy of the prospectus or offering circular.

4*L.* 1967, c. 93.

5The Real Estate Syndication Offerings Law, *N. J. S. A.* 49:3–27, et seq., was expressly left unchanged by the new legislation.

the two laws dealing with the question as to what securities may lawfully be sold within a given state.

The Uniform Act — as opposed to our law — provides, in § 301, that it is unlawful for any person to offer or sell any security within the state unless it has first been registered with the state agency or is exempt under the act. Compare the New Jersey statute, which reads, in pertinent part as follows:

It is unlawful for any security to be offered or sold in this State unless:

(a) the security or transaction is exempted under section 3 [*N. J. S. A.* 49:3–50] of this act;

(b) the security or transaction is not subject to or is exempted from, the registration requirements of the Securities Act of 1933 and the rules and regulations thereunder; other than by reason of section 3(a) of such act and the rules and regulations under said section 3(a);

(c) *the security is registered under the Securities Act of 1933;*

(d) the security is registered under the Real Estate Syndication Offerings Law; or

(e) the security is registered under this act. [*N. J. S. A.* 49:3–60; Emphasis supplied]

Under the Uniform Act — absent statutory exemption — no offering or sale is legal without state registration. In contrast the New Jersey statute sets forth a specific list of exceptions, including securities registered under the federal statute, as to which there need be no state registration. That *N. J. S. A.* 49:3–60(c) is intended as an exemption from state registration is unequivocally manifested by *N. J. S. A.* 49:3–63 which calls for the filing of certain data "unless the security is not required to be registered by section 13 [*N. J. S. A.* 49:3–60] of this act." Thus we have a legislative rejection of the blanket requirement for state registration appearing in the Uniform Act in favor of a much narrower requirement which, in practice, will be limited essentially to intrastate offerings.

Appellants argue, we think convincingly, that our statute should be taken to mean exactly what it clearly im-

plies, that where securities have been registered under the Securities Act of 1933 they may, without more, be offered or sold within this State and that there need be no separate registration here. We can find nothing in the entire statute to suggest that there is any power in the state regulatory agency to prevent or inhibit such offering or sale based upon an adverse finding following substantive review, absent, of course, any element of fraud.

Authority for substantive review, such as was here undertaken by the agency, can be found only in *N. J. S. A.* 49:3–64. This provision is clearly limited to those instances where a registration statement has been filed in New Jersey. Accordingly if, as we have here found to be the case, there is no requirement that there be local registration, it follows that there is no statutory basis for invoking substantive review.

We are further confirmed in our belief that it was not the legislative purpose to require state registration of federally registered securities by the fact that our statute, the Uniform Securities Law (1967), has been interpreted in this way by all of the commentators and students of the subject who have expressed themselves upon this point. Thus Professor Loss[6] says,

The New Jersey provision on registration of securities generally (as distinct from real estate syndications) attaches only to those intrastate or other issues that are neither registered under the Securities Act of 1933 nor offered in a transaction exempted under that act. [4 *Loss, Securities Regulation* (Supp. 1969) 2262]

The New Jersey securities law was amended in 1967 so as to require registration of intrastate securities offerings. Registration will not be required if a security or transaction qualifies for certain exemptions under the New Jersey law or the Securities Act of 1933, *or if the se-*

---

6A well known authority in the field of securities regulation, Professor Loss was the principal draftsman of the Uniform Securities Act. 7 *Uniform Laws Annotated-Business and Financial Laws* (Master ed.) 691

curity is registered under the 1933 Act. [*Adams, 1967 Developments-State Securities Regulation,* 23 *The Business Lawyer* 785, 797 (1968); Emphasis supplied]

To the same effect see *Mofsky, Blue Sky Restrictions on New Business Promotions* (1971) 133; *Bloomenthal, Blue Sky Regulation and the Theory of Overkill,* 15 *Wayne L. Rev.* 1447, 1452 (1969); *Hueni, Application of Merit Requirements in State Securities Regulation,* 15 *Wayne L. Rev.* 1417, 1420 (1969).

Finally, various materials have been submitted by the *amicus curiae* which indicate very clearly that the persons who drafted the statute and who presented it to the Legislature — as an administration measure — intended that the state agency should *not* have the power of substantive review where a proposed offering had already been federally registered. The most important of these materials are an affidavit of William J. Ivey, a partner in the law firm of Sullivan & Cromwell, which represented the Investment Bankers Association, and an affidavit of Arthur J. Sills, then Attorney General of the State of New Jersey. The latter affidavit is essentially corroborative of the former. Mr. Ivey's statement, considered together with various memoranda which he and his associates prepared at the time the law was drafted, reveals that from 1964 until 1967 a major revision of the legislation concerning securities regulation within this State was being actively considered. A bill, modelled on the Uniform Act and providing for a full review of all securities offerings, whether federally registered or not, was first prepared apparently in the office of the Attorney General. When this came to the attention of the Investment Bankers Association, it expressed its interest in the subject matter of the proposed legislation and sought to be allowed to discuss the bill with the draftsmen and to submit its views to them. As a result of this request a meeting was held which was attended by Mr. Sills, a Deputy Attorney General assigned to the Securities Bureau, the

then Chief of the Bureau of Securities, all as representing the State, and Mr. Ivey and other representatives of the Association. The latter group expressed the belief that, while legislation looking to a closer control over securities offerings in New Jersey seemed desirable in the light of certain existing abuses, these abuses stemmed largely if not entirely from intrastate rather than from interstate offerings, and legislation confined to the more stringent regulation of *intrastate* offerings would be adequate to remedy the mischief. It was further pointed out that a requirement of full registration and substantive review at the state level would be, at least in part, duplicative of the federal processs, would be expensive and inconvenient and would place New Jersey in a competitively inferior position with respect to other states sharing in benefits derived from the nearby metropolitan securities markets. Apparently these arguments prevailed. The bill was redrafted to embody these suggestions and as so revised was introduced and passed by the Legislature.

The State has moved to suppress these extraneous materials urging, *inter alia,* that they are in part hearsay, that it is not shown they were known to the Legislature and that some of them at least are tainted with the bias of their source. We now deny this motion to suppress.

■■ Our conclusion as to the meaning and true intent of the statute is reached without reference to any extrinsic materials. There is really no ambiguity in the enactment and hence no compelling need to resort to interpretative aids. The value of these materials in this case lies in the confirmation which they bring. Not only may extrinsic aids be used to resolve legislative ambiguities, *N. J. Pharmaceutical Ass'n v. Furman,* 33 *N. J.* 121, 130 (1960) ; *Westinghouse Electric Corp. v. Board of Review,* 25 *N. J.* 221, 226 (1957) ; *Fisher-Stevens, Inc. v. Director, Division of Taxation,* 121 *N. J. Super.* 513, 517–518 (App. Div. 1972), certif. den. 62 *N. J.* 575 (1973), they may also appropriately supply reassuring confirmation of literally apparent meaning;

as is here the case. *Deaney v. Linen Thread Co.,* 19 *N. J.* 578, 585 (1955). Nor do we think it is improper to consider materials which may never have met the legislative eye. While a proposed enactment may first see the light of day in legislative chambers, its conception and preparation have frequently taken place elsewhere. This is normally true of administration proposals. Of course such materials must be carefully scrutinized and their weight and authenticity evaluated, but we see no merit in a rule demanding their total exclusion from judicial consideration.

 As interpreted by the State, *N. J. A. C.* 13:13–10.1, for the reasons we have expressed above, clearly exceeds the statutory power which the Legislature has delegated to the agency. We do not mean to imply, however, that the Division may not adopt suitable rules and regulations designed to implement the several statutory provisions condemning fraudulent or misleading activities on the part of any person in connection with the offering or sale of securities. Indeed *N. J. A. C.* 13:13–10.1 could rather easily be revised to fulfill such a purpose. As so restated, having as its design the implementation suggested above rather than purporting to condition qualification for offer and sale, it would presumably be valid. In this connection we call attention to *N. J. S. A.* 49:3–63, mentioned above in another connection. This provision authorizes the agency

> by rule or order [to] require the filing of any prospectus, pamphlet, circular, form letter, advertisement, or other sales literature or advertising communication addressed or intended for distribution to prospective investors, including clients or prospective clients of an investment advisor, unless the security is not required to be registered by section 13 [*N. J. S. A.* 49:3–60] of this act.

We do not interpret this section of the statute as in any way limiting the broad powers of the Division to require the filing with it of such relevant data and material — including the items enumerated in the provision quoted above

— as it may deem necessary or useful in fulfilling its responsibility to protect the investing public against fraud or misrepresentation. We take it to refer only to the lack of any need for the filing of such materials as a prerequisite of local registration where, because of federal registration, no such local registration is required.

In view of our decision as to the invalidity of the regulation under attack, it becomes unnecessary to consider the other issues raised and argued upon this appeal.

The judgment of the Appellate Division is reversed, the order entered by the Division of Consumer Affairs on June 23, 1971 is set aside and *N. J. A. C.* 13 :13–10.1 is hereby declared invalid.

WEINTRAUB, C. J. (concurring). I concur in the result but not without difficulty.

The Securities Act of 1933; 15 *U. S. C. A.* § 77a *et seq.,* deals with interstate offerings and seeks to assure full "disclosure" with respect to them. The federal statute does not deal with the "merits" or substance of the proposed sale. The stock offered may be worthless, or the promoters may seek an inordinate gain at the expense of purchasers, but if the disclosure is full, the federal act is satisfied. This is so notwithstanding that the average purchaser is hardly able to comprehend the terms and to make a judgment upon them. It remains for the several States to deal with the problem of overreaching or defrauding of the purchasers.

The Uniform Securities Act, 7 *Uniform Laws Ann. p.* 691, provides for "substantive" review of the merits of stock offerings, both interstate and intrastate. As the opinion of the Court indicates, the Uniform Act was seriously amended in our Legislature before it was enacted. The question is whether the amendments eliminated "substantive" review as to an interstate offering which passed muster as to "disclosure" under the federal statute. The amendments, which did not make that purpose plainly visible,

could nonetheless be found to lead to that result as the opinion of the Court concludes.

In reaching its conclusion, the opinion of the Court relies in part upon material submitted by the *amicus curiae* revealing conversations within the interested association and converations by its representatives with the Attorney General. The opinion of the Court notes that it was asserted in that material that substantive review at the State level would in part be duplicative of the federal process. But that proposition was inaccurate. State action would thus be "duplicative" as to interstate offerings only if the State dealt with "disclosure," for, as noted above, the federal statute deals with that facet. But "substantive" review of interstate offerings would not "duplicate" the action of the federal agency, for, as we have said, the federal agency is not concerned with that subject. However, it is true that the material submitted by the *amicus curiae* reveals that thereafter the Attorney General said he was concerned only with *intrastate* offerings, and representatives of the industry, upon being so advised, sought to fashion amendments to that end. Some remaining language in the statute refers to *interstate* offerings, thus suggesting such offerings would be subject to substantive review by the State agency. Other explanations are advanced to us to account for that residual language, but none is unequivocal.

One can understand a purpose to deal only with "discloure" with respect to *intrastate* offerings, thus paralleling the limited federal action as to interstate offerings. But if "substantive" review as to *intrastate* offerings is worthwhile, it is not clear why the State should decline thus to protect its residents with respect to *interstate* offerings. Indeed we are told that *intrastate* offerings are but a handful.[1]

---

[1] When he signed the bill into law, the Governor seemed to speak more expansively:

"Finally, Senate Bill No. 327 revises the State Uniform Securities Law and for the first time requires the filing of registration state-

Although I cannot say with conviction that the opinion of the Court incorrectly reads the legislative record and its end-product, I think it should be made clear that in this important area of consumer protection, the contribution made by the statute, as interpreted by us today, is quite puny.

Mr. Justice JACOBS joins in this concurring opinion.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges CONFORD and LEWIS—6.

*For affirmance*—None.

ments prior to the sale of securities to the public. This measure, I am certain, will be of great assistance in protecting the public, particularly the unsophisticated buyer of securities, so that he may be fully alerted to any risks involved in such purchases."