126 N.J. Super. 42 (1973)
312 A.2d 671
IN THE MATTER OF INFORMATION RESOURCES CORP., A NEW JERSEY CORPORATION.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1973.
Decided November 27, 1973.
*44 Before Judges GOLDMANN, FRITZ and LYNCH.
Mr. Arthur J. Gajarsa, of the District of Columbia Bar, argued the cause pro hac vice for appellant Information Resources Corp. (Mesesrs. Popper, Bain, Bobis, Gilfillan & Rhodes, attorneys).
Mr. Thomas H. Sullivan, Deputy Attorney General, argued the cause for respondent Bureau of Securities (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Sullivan on the brief).
The opinion of the court was delivered by GOLDMANN, J.A.D., Temporarily Assigned.
Information Resources Corp. (IRC) appeals from an order of the Chief of the Bureau of Securities prohibiting it, for a period of one year commencing May 15, 1972 and terminating May 15, 1973, from availing itself of (a) the registration of securities *45 provisions of N.J.S.A. 49:3-61 and 62 and Bureau Regulation 13:13-52, and (b) the exemption from registration provisions of N.J.S.A. 49:3-50(a) and (b) and Regulation 13:13-53. The order further directed that the company "cease and desist from directly or indirectly negotiating, offering for sale, or issuing any of its securities from or within the State of New Jersey." The order was based on a determination that IRC had engaged in the sale of securities in violation of the Uniform Securities Law, N.J.S.A. 49: 3-47 et seq.
IRC was incorporated in New Jersey on March 17, 1970. From July 1970 to February 1971 it maintained offices in New Jersey, first in Union and then in Mountainside. Since then its offices have been located in New York City.
The company was formed to engage in the general manufacture and sale of computer peripheral equipment and related systems  specifically, the development of a data acquisition and recorder terminal. In order to fund the project the board of directors authorized the issue and sale of a single class of common stock. Neal L. Hade, of Sea Cliff, N.Y., now the corporate president, was the moving force behind IRC and received 609 shares for the $25,000 and other assets, technical know-how and prior services he had contributed. Hade and Sal Mancino, of Seaford, N.Y., had before the incorporation been partners in developing the proposed product. Mancino received 100 shares for his contribution of some $5,000 in electronic components and for certain technical services. At the same time Mel Margolies, of Little Neck, N.Y., secretary-treasurer of IRC, received 50 shares for services he had rendered. Thereafter relatives, friends and former clients came forward to request that they be allowed to invest in the enterprise. Shares in varying amounts were sold to them, the price increasing as the terminal project progressed from wooden prototype to working model.
As of January 7, 1972 the company had issued 1,000 shares to 20 individuals. The first shares were issued on August 17, *46 1970 (to Hade), and the last on November 22, 1971. Of the 20 shareholders 4 transferred their 46 shares to an attorney, and a stock certificate was duly issued to him as their trustee in exchange. If one assumes (as appears to be the case) that the four beneficiaries were residents of this State at the time they acquired their stock, the total number of New Jersey purchasers was eight. Eleven were residents of and acquired their shares in New York State, and one in Maryland. Within the 12-month period from December 17, 1970 to December 17, 1971  the period chosen by the Bureau Chief  there were sales of IRC stock to 17 persons, 8 of them residents of New Jersey.
The proceedings in the Bureau were initiated by an order requiring IRC to produce certain specified documents relating to the corporate structure and to securities sales. The company complied on January 10, 1972, at the same time seeking an exemption from the registration of securities under N.J.S.A. 49:3-50(b)(9). On February 14, 1972 the Bureau issued an order directing the company to show cause why it should not be declared to have offered or sold and issued its shares without complying with the registration requirements of our Uniform Securities Law or obtaining an exemption therefrom. In response to that order the company appeared for a hearing before the Chief of the Bureau, acting as hearing examiner. He filed his findings of fact and conclusions of law in regular course, and on May 5, 1972 issued the order of prohibition here on appeal.
IRC's principal contention is that the Bureau erred in holding that the company's sales of its shares were not exempt from registration under N.J.S.A. 49:3-50(b)(9). That section reads:
(b) The following transactions are exempted from the provisions of [N.J.S.A. 49:3-60, "Registration of Securities," and N.J.S.A. 49:3-63, "Filing of Sales Literature"] of this act:

* * * * * * * *
(9) any transaction pursuant to an offer directed by the offeror to not more than 10 persons * * * in this State during any period of *47 12 consecutive months, whether or not the offeror or any of the offerees is then present in this State, if (i) the seller reasonably believes that all buyers are purchasing for investment, and (ii) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this State; but the bureau chief may by rule or order, as to any transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in subdivision (i) and (ii) * * *.
The Bureau Chief held that sales of securities by a New Jersey corporation to non-Jersey residents constituted the sale of securities "in this State" and could be considered by the Bureau in determining whether IRC was exempt from the provisions of the Uniform Securities Law under the "private offering" exemption provisions of N.J.S.A. 49:3-50(b)(9). He found that the company had exceeded the permissible number of sales and was therefore in violation of the law because it had not registered or obtained an exemption from registration.
In brief outline, the cited exemption section states in unambiguous language that security transactions are exempt from the registration requirements of the Act if (a) directed to not more than ten offerees in this State within a period of 12 consecutive months, (b) the purchases are for investment, and (c) there is no commission or other remuneration paid or given for soliciting a prospective buyer in this State.
There is nothing in the record showing that remuneration of any kind was given or paid to the offeror (solicitor).
It is also evident from the record that all purchases of IRC shares were for investment purposes. The uncontroverted evidence was that purchasers were requested to sign, and did sign, an "investment letter" indicating their intent of purchasing for investment. Although the Bureau Chief manifested a somewhat negative attitude toward the letter  he said he had never seen one quite like it  the thrust and significance of the statements contained therein cannot be ignored. Certainly they formed a basis for the company, through its officers and directors, to reasonably believe that the purchasers' *48 intent was to invest, not speculate. All that the quoted statute requires is that "the seller reasonably believes that all buyers are purchasing for investment."
This brings us to consideration of the number of offers made in this State in any period of 12 consecutive months. It was uncontroverted that IRC common stock was sold to a total of 20 persons in a 20-month period from March 17, 1970, when IRC was incorporated, to November 22, 1971. (Taking the Bureau's 12-month period from December 17, 1970 to December 17, 1971  and this would eliminate Hade, Mancino and Margolies, who acquired their 759 shares before that time  there were 17 purchasers.) As already noted, only eight were New Jersey residents  or using the language of the statute, transactions pursuant to an offer were directed by the offeror to only eight persons in this State. And if one were to count the trustee to whom four of these eight transferred their shares, with the company issuing a single stock certificate to him, at best the number would be increased to nine.
With respect to the shares acquired by the other 12, it is to be noted that three (Hade, Mancino, Margolies) obtained theirs in connection with the formation of the company, and this in New York. The other nine also bought their share in New York, after the company had moved its offices there in February 1971. These, like others, approached the company in an apparent desire to invest in the promising field of computer technology. They were accommodated. The offers, the acceptances, and the completed sales all involved only New York and Maryland  never New Jersey. This takes the transactions out of the statute's registration requirement: as such they are not to be counted in determining the right to exemption under N.J.S.A. 49:3-50(b)(9). The language there, relevant to the question of offer and acceptance, is (to repeat) whether the offeror directs his offer "to not more than 10 persons * * * in this State * * * *49 whether or not the offeror or any of the offerees is then present in this State * * *."
In support of the Bureau's action respondent's brief urges that the legislative intent is indicated by N.J.S.A. 49:3-51, which deals with the scope of the Act and provides in pertinent part:
(a) Sections [N.J.S.A. 49:3-60, "Registration of Securities"] apply to persons who sell or offer to sell when (1) an offer to sell is made in this State, or (2) an offer to buy is made or accepted in this State;

* * * * * * * *
(c) For the purpose of this section, an offer to sell or to buy is made in this State, whether or not either party is then present in this State, when the offer (1) originates from this State (2) is directed by the offeror to this State and received at the place to which it is directed (or at any post office in this State in the case of a mailed offer);
(d) For the purpose of this section, an offer to buy or to sell is accepted in this State when acceptance (1) is communicated to the offeror in this State and (2) has not previously been communicated to the offeror, orally or in writing, outside this State; and acceptance is communicated to the offeror in this State, whether or not either party is then present in this State, when the offeree directs it to the offeror in this State reasonably believing the offeror to be in this State and it is received at the place to which it is directed (or at any post office in this State in the case of a mailed acceptance);

* * * * * * * *
It is argued that this demonstrates the Legislature's concern "to subject to regulation as broad a spectrum of offers and sales of securities as possible in order to insure the investing public a full measure of protection." One may readily subscribe to that proposition and yet conclude that there is nothing in N.J.S.A. 49:3-51 or elsewhere in the statute in conflict with our interpretation of the registration requirements: that they do not encompass offers, acceptances and the resultant sales made entirely outside of New Jersey, at least in the application of N.J.S.A. 49:3-50(b)(9) to the facts of this case.
The Bureau does not allege that the statutory language under consideration is vague or ambiguous. Unambiguous *50 language is presumed to express the legislative purpose, Bass v. Allen Home Imp. Co., 8 N.J. 219, 226 (1951); see Lane v. Holderman, 23 N.J. 304, 313 (1957), and is not, except in the clearest case, to be given extraterritorial operation. Cf. United States v. Spelar, 338 U.S. 217, 222, 70 S.Ct. 10, 94 L.Ed. 3 (1949).
Only eight (at best, nine) of the offers were "in this State." The Bureau would add all the transactions with the other purchasers of IRC stock, notwithstanding that no aspect of any of them occurred in, or had any effect in, New Jersey. By doing so it fell into error. The company had discharged its burden of proof by establishing all of the three elements necessary for exemption under N.J.S.A. 49:3-50(b) (9). IRC was therefore not required to register its securities under the registration section, N.J.S.A. 49:3-60. The order of prohibition must therefore be reversed.
Although this concludes the matter, we consider it not inappropriate to comment briefly on the sanctions imposed by the Bureau. IRC contends that, assuming all the offers of its stock were offers beyond the ten-person ambit of N.J.S.A. 49:3-50(b) (9), the sanctions constituted an abuse of the Bureau's discretion and were punitive, inappropriate and contrary to the purposes of the Uniform Securities Law.
N.J.S.A. 49:3-67(a) authorizes the Bureau Chief to issue such orders as are reasonably necessary to carry out the provisions of the Act. What is reasonably necessary finds more explicit exposition in subsection 67(b): only such orders may issue as are "necessary and appropriate (1) in the public interest, or (2) for the protection of investors, or (3) consistent with the purposes fairly intended by the policy and provisions of this act."
Initially, we observe that there was no finding of fraud or willful violation of the statute, or that any of the investors were injured by the sale of IRC stock. In fact, there was no finding that the company would not have been entitled to an exemption from registration had timely application therefor *51 been made. Prohibiting the company from procuring an exemption from registration or from availing itself of the lawful registration of its securities for a period of one year strikes us as unduly harsh. We need not, however, pass upon these aspects of the order of prohibition, for the sanctions expired by their own terms on May 15, 1973.
The third and final sanction imposed was, as heretofore stated, that IRC "cease and desist from directly or indirectly negotiating, offering for sale, or issuing any of its securities from or within the State of New Jersey." This sanction, as worded, would appear to be without term  a permanent injunction. Realizing, as we do, that ordinarily we are loath to substitute our judgment as a reviewing court for that of the Bureau Chief, Higgins v. N.J. Bureau of Securities, 100 N.J. Super. 266, 276 (App. Div. 1968), that sanction, if so construed, would clearly represent an abuse of discretion in light of the facts and circumstances attending the issuance and sale of the IRC shares to the several investors. Cf. Data Access Systems, Inc. v. State, 117 N.J. Super. 95, 99 (App. Div. 1971), rev'd in 63 N.J. 158 (1973), because the Bureau could not require state registration of federally registered securities.
However, respondent assures us that a permanent cease and desist order was not intended. After the one-year prohibition had run, says the State, IRC could avail itself of the statutory provisions for registration or exemption, and assuming it did so, would then be free to offer its securities for sale. The one-year period has run; the company now has the option of seeking registration or exemption.
One other matter: IRC contends that the proceedings in the Bureau violated its rights to due process, an impartial hearing and fundamental fairness. The basis for this claim is the concentration of power lodged in the Bureau Chief, who acted not only as investigator and preliminary finder of fact, but as hearing examiner and adjudicator of guilt. We need not advert to the company's specification of instances *52 where the hearer allegedly dealt unfairly with the presentation of its case.
Considering the whole of the record, the hearing was essentially a fair one. We have dealt above with the findings and conclusions reached. The real challenge here is to the procedure required by the statute. Federal courts as well as our own have held that the mere combination of functions in a single agency does not, without more, violate due process. For example, in Mackler v. Bd. of Education, Camden, 16 N.J. 362 (1964), the Supreme Court held that although a concentration of inquisitional, prosecutional and judicial power must be guarded against in order to preserve impartiality of judgment, the mere fact that two board of education members had signed a formal complaint against defendant did not disqualify them from participating in the hearing, especially since no malice or ill will against defendant could be shown. See also, In re Blum, 109 N.J. Super. 125 (App. Div. 1970), holding that a merger of the functions of investigation, prosecution and judgment in the State Board of Medical Examiners would not violate due process. Cf. F.S. Donahue, Santo & Co. v. Kugler, 119 N.J. Super. 377 (App. Div. 1972), rev'd 61 N.J. 492 (1972).
The wisdom of creating an agency with a responsibility for both initiating and adjudicating a proceeding is a legislative function, and not a judicial one. In re Larsen, 17 N.J. Super. 564, 569-570 (App. Div. 1952), and see 575, Judge (now Mr. Justice) Brennan concurring. We perceive no prejudice that was visited upon IRC by reason of the concentration of powers in the Bureau Chief here complained of.
The order of prohibition is reversed.