THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. MORTIMER L. SCHULTZ, DEFENDANT-APPELLANT.

Argued November 23, 1965—Decided January 24, 1966.

Mr. *Michael A. Querques* argued the cause for appellant (*Mr. Frank P. Villanova,* of counsel and on the brief; *Messrs Querques & Isles,* attorneys).

Mr. *Brendan T. Byrne,* Essex County Prosecutor, argued the cause for respondent (*Mr. Barry H. Evenchick,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered

PER CURIAM. Defendant was tried on 12 indictments containing a total of 74 counts, involving sundry charges arising out of substantial swindles. Four counts were dismissed at trial. The jury convicted defendant on 67 of the remaining 70 counts. The sentences imposed aggregated 10 to 20 years in State Prison. We certified defendant's appeal before argument in the Appellate Division.

## I.

The first issue relates to comments upon defendant's failure to take the stand.

The trial started on May 13, 1964. The jury was charged by the trial court on June 15. It was on that day that *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964), was handed down. Defendant not having taken the stand, the trial court commented upon that failure in accordance with the then settled view in our State, saying that defendant's failure to testify did not raise a presumption of guilt and that the presumption of innocence nonetheless obtained, but that the jury may infer defendant could not truthfully deny those incriminating facts in the testimony which he could meet by his own oath.

Upon learning the content of *Malloy* the prosecutor, apprehending that that decision might lead to a disapproval in constitutional terms of the instruction here given, asked the trial court to recall the jury and to instruct it to draw no inference whatever from defendant's failure to testify. The trial judge acceded to the prosecutor's request, charging the jury in part as follows:

"This portion of the charge that I have just referred to shall be disregarded in every respect, and not be applied by you as the law in this case. You will consider it as not charged and likewise I instruct you that any and all comments made by the Prosecutor either during the course of the trial or in argument, or in summation in regard to the failure of the defendant to testify, are also stricken and must be disregarded, and I give you the following charge which shall govern your deliberations:

'This defendant as are all defendants in criminal cases is presumed to be innocent, and this presumption of innocence stays with the defendant throughout the trial, and until you, the members of the jury, reach a verdict. The failure of the defendant to take the witness stand and testify in his own behalf does not create any presumption against him, and you are charged that you must not permit the fact that he failed to take the stand to weigh in the slightest degree against the defendant, nor shall this fact enter into the discussions or deliberations of the jury in any manner.' "

After the trial of the within case we held that *Malloy v. Hogan* and *Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965), must be read to proscribe the instruction as initially given the jury in this matter notwithstanding that the instruction did not treat silence as evidence of guilt and limited its impact to the evaluation of evidence actually in the case, and indeed to direct evidence which a defendant could dispute on his own oath. We have held, too, that upon a direct appeal (compare *Tehan v. Shott,* 86 *S. Ct.* 459, Jan. 19, 1966) a defendant will be accorded the benefit of the new rule but on the basis of the case as tried and not upon a speculation as to how a defendant might have gone about his defense had he anticipated *Malloy* and *Griffin.* See *State v. Fioravanti,* 46 *N. J.* 109 (1965); *State v. Davis,* 45 *N. J.* 195 (1965); *State v. Aviles,* 45 *N. J.* 152 (1965); *State v. Lanzo,* 44 *N. J.* 560 (1965); *State v. Garvin,* 44 *N. J.* 268 (1965).

The trial was lengthy, as we have already noted. The jury received the case for deliberation at 5:05 P. M. on June 15. The deliberations were recessed at 11:00 P. M. Presumably the jurors took some time to eat. They reconvened at 9:30 A. M. on June 16. At 11:02 A. M. the prosecutor requested the court to recharge the jury. At 11:20 A. M. the jury was instructed to suspend deliberations. The jury resumed deliberations at 1:58 P. M., after receiving further instructions quoted above. The verdicts were returned at 5:00 P. M., and as we have already noted the jury acquitted defendant on three of the charges.

We are satisfied that upon the total circumstances of this case there is no reasonable basis for reversal, and we so conclude upon the following factors.

(1) Defendant, an informed, articulate, and intelligent man, who had been represented before trial by counsel of his own selection, chose to try the case himself. We gather that he consulted with his own counsel during the trial, and defendant's performance reveals some tutoring in legal concepts and terminology. Nonetheless, defendant himself made his

failure to take the stand a conspicuous fact that nothing could conceal. In cross-examining State's witnesses, he persisted in particularized statements of factual claims, which, but for a question mark tagged at the end, were simply his unsworn claims. Indeed defendant made specific assertions of fact without even the pretense that they were intended as questions. The prosecutor understandably responded to defendant's improper actions, and in the course of his response referred to defendant's right to take the stand. In dealing with the State's objections and motions, the trial court necessarily instructed the jury that unsworn assertions of fact must be disregarded. See *Smith v. United States,* 234 *F. 2d* 385, 388 (5 *Cir.* 1956). Thus the jury's attention was inevitably focused on defendant's right and failure to testify, and this because of defendant's decision to try the case and to try it his way. Indeed defendant's behavior led to something capable of greater impact than a mere comment to the effect that he did not take the stand, since the jury knew from defendant's statements that there was something he could say and tried to say but which the jury had to ignore for want of a verifying oath.

(2) Defendant was repeatedly warned with respect to unsworn factual assertions. Nonetheless he persisted, and the conviction seems inescapable that he did so in a calculated attempt to gain an advantage he could not have achieved through the services of a member of the bar. Such conduct has been held to warrant comment, in the nature of a fair response, which calls attention to a defendant's failure to take the stand. *Redfield v. United States,* 315 *F. 2d* 76 (9 *Cir.* 1963); *Smith v. United States, supra,* 234 *F. 2d* 385; but cf. *United States v. Curtiss,* 330 *F. 2d* 278 (2 *Cir.* 1964).

(3) Despite the warnings mentioned above, defendant said in his summation:

"* * * Have I taken the stand? I could have done nothing but say the facts are true the intent is gone and there is no intent. What else could I say? What else could I explain?

I don't deny the checks were drawn to me, but they were proper. I don't deny I got seventy-six units of Wiss, but they were proper. I don't deny there were short-sales, or over-allocations in connection with the operation of the creation of the real estate syndication business, but in due course they were properly covered with the full knowledge of our accountants and of our Board of Directors, of our attorneys, and they participated in it, and if it was wrong they would never have participated. * * *"

In passing we note that the reason given for not testifying does not square with defendant's earlier statement at side bar that he hesitated to testify only because of a prior conviction of crime. At any rate, in his final attempt to communicate with the jury, defendant acknowledged the truth of the very facts to which the court's comment applied. Thus while the comment would permit the jury to infer that defendant could not deny certain facts in the testimony, defendant himself told the jury those facts were true. The sole matter with which he took issue was the intent with which he did the sundry things proved against him. He does not suggest there was any direct testimony relating to intent, and hence the court's comment did not reach that subject. We note that in *United States v. Feinberg*, 140 *F. 2d* 592, 595, 154 *A. L. R.* 272 (2 *Cir.* 1944), a statement by defense counsel as to what his client would have said on the stand was held to justify comment by the prosecutor upon the failure to testify. In any event, since defendant conceded everything to which the comment related, we see no possibility of harm.[1] *Cf. People v. Teale*, 45 *Cal. Rptr.* 729, 740, 404 *P. 2d* 209, 220 (*Sup. Ct.* 1965).

---

[1] Defendant does not attempt to demonstrate the comments of the prosecutor and the trial court were harmful when viewed in the context of the whole record. In fact, defendant presented so little of the record that no such evaluation, if it were critical, could be made. The State on the other hand urges an erroneous comment never warrants a reversal unless it can be found to have been harmful in the light of the total case. We referred to that question, without deciding it, in *State v. Fioravanti, supra*, 46 *N. J.*, at *p.* 121. Here, too, the question need not be met, because among the other things referred to above, the comment went no further than defendant's own admission in his summation and thus the possibility of harm was affirmatively dispelled.

■ For these reasons we cannot find the comments during the trial or in the court's charge to the jury offended controlling federal doctrine. To this we add that the comments were in fact withdrawn in the supplemental instruction. Indeed, in withdrawing the comment the trial judge charged that the fact that defendant failed to take the stand shall not "enter into the discussions or deliberations of the jury in any manner." In thus instructing the jury that defendant's silence must be disregarded, the trial judge may have accorded defendant an instruction which the Federal Constitution does not require. That question was expressly reserved in *Griffin v. State of California, supra, fn.* 6, 380 *U. S.,* at *p.* 616, 85 *S. Ct.,* at *p.* 1233, 14 *L. Ed. 2d,* at *p.* 110:

"We reserve decision on whether an accused can require, as in Bruno v. United States, 308 U. S. 287, 60 S. Ct. 198, 84 L. Ed. 257, that the jury be instructed that his silence must be disregarded."

## II.

Next defendant claims an immunity from prosecution under *N. J. S. A.* 49:3-16(d), a provision of the Uniform Securities Law. The Bureau of Securities conducted an investigation under the provisions of the statute and ultimately succeeded in obtaining an injunction against this defendant. *Conroy v. Schultz,* 80 *N. J. Super.* 443 *(Ch. Div.* 1963).

Defendant's operations are described in the case just cited. He masterminded these swindles through the medium of corporations and a number of limited partnerships, he being, with one exception, the general partner and the individuals mulcted being sold what purported to be interests as limited partners. The corporate and partnership records were obtained by the Bureau of Securities by a subpoena addressed, not to the defendant, but to an individual who had custody of them and who was described in the record as the treasurer of the principal corporation involved.

Defendant seeks to claim immunity from prosecution under *N. J. S. A.* 49:3-16(d) which provides that a person must

testify and must produce his records pursuant to subpoena but if he does so after claiming his privilege against self-incrimination he may not be prosecuted with respect to the transaction to which such testimony or records relate.

■ Defendant was not subpoenaed to produce any record, and he produced none, but he claims the custodian of the corporate and partnership records produced some personal records in response to the subpoena upon the custodian. Defendant did not identify those records in his brief but after argument he referred us to nine of some 180 exhibits. The most we can find is that some of the exhibits produced by the custodian in response to the subpoena contained what appear to be individual entries concerning defendant, but for all we can tell, they may well have been part of the total records of the business operations because of the mode in which those operations were conducted. In any event, defendant makes no effort to show how any of those entries or records bears upon his conviction as to any count. Further, no claim of privilege was made to the Bureau when the records were handed over. In these circumstances there is no factual basis for a claim of immunity.

■ Defendant argues, as an incident to his basic claim of immunity, that the records were obtained by an illegal search and seizure. There was no search or seizure. There was a subpoena, and the representative of the corporation and limited partnerships complied with the subpoena without protest.

### III.

■ The final point is that the sentence was manifestly excessive. We find no reason to question the trial court's judgment. *State v. Brown*, 46 *N. J.* 96 (1965).

The judgments are affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL and HANEMAN—5.

*For reversal*—None.