100 N.J. Super. 266 (1968)
241 A.2d 660
ROBERT MICHAEL HIGGINS, APPELLANT,
v.
NEW JERSEY BUREAU OF SECURITIES, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1968.
Decided April 5, 1968.
*269 Before Judges GOLDMANN, KILKENNY and CARTON.
Mr. Morris M. Schnitzer argued the cause for appellant (Messrs. Kasen, Schnitzer & Kraemer, attorneys; Mr. Waldron Kraemer on the brief).
Mr. John W. Hayden, Jr., Assistant Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Samuel Bornstein, Deputy Attorney General, of counsel; Mrs. Virginia Long Annich, Deputy Attorney General, on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
Robert Michael Higgins appeals from an order of respondent Bureau of Securities revoking his registration as a securities agent in New Jersey. The grounds for the revocation were that Higgins' application for registration contains false and misleading statements in a material respect and that his character is such that he is not qualified to be an agent.
On November 30, 1966 Higgins filed an "Agent Application" form provided by the Bureau, seeking registration as a securities agent. Under oath he answered in the negative each of the following questions on the application:
"13. Have you:
* * * * * * * *
d. been arrested or convicted of any crime, misdemeanor or disorderly persons offense?
* * * * * * * *
g. been subject to any disciplinary action, past or pending, by any administrative, governmental or regulatory body?
h. been charged with a violation of any statute, rule, regulation or ordinance of any municipal, administrative, regulatory or other governmental body?
By virtue of N.J.S.A. 49:3-57(a), which provides that, unless denied by the Bureau, an application becomes effective *270 30 days after filing, Higgins was licensed on January 7, 1967 as an agent to sell securities. Thereafter, respondent served notice of an intention to revoke Higgins' registration, charging that his application contained false and misleading statements. Prior to hearing, respondent served supplemental charges that appellant was not qualified to act as an agent on the basis of character, by virtue of his false answers to the application and other occurrences during his military career.
Higgins' military service record, admitted into evidence at the hearing before the Chief of the Bureau, reveals court martial convictions spanning the years 1953 to 1956 for, among other things, A.W.O.L. violations, desertion, resisting arrest, and grand larceny by means of force and violence. For the latter offense appellant was sentenced to three years and six months at hard labor, forfeiture of pay and a dishonorable discharge in 1956. In addition, investigation by the Bureau showed that Higgins had been arrested on January 2, 1954 by the New York Police Department on a grand larceny charge arising out of an auto theft.
Higgins, in his defense to the charge of giving false answers, stressed that he did not think the questions called for him to divulge offenses or courts martial while in the military service. As to the charge of being unfit in character, he excused these episodes of his military career as youthful escapades attributable to an underprivileged childhood and drink and claimed he was now a reformed or redeemed person. He did, however, concede his involvement in a New York auto theft, his arrest by military police upon several occasions, and his knowing participation in the larceny with force and violence. As to this most serious charge, Higgins admitted that he and a friend had struck a sleeping fellow soldier with a tire iron and robbed him of $400 in Military Payment Certificates.
He also contended that after his discharge from the military in 1956 he had turned over a new leaf, and pointed to his record of employment and improved economic circumstances *271 since that time. However, the Bureau Chief in his findings concluded that even this record was questionable and evidenced appellant's irresponsibility. Although appellant had worked four years with a securities firm in New York immediately after he completed serving his prison sentence, during which time he married, the Bureau Chief was satisfied that appellant had left the firm in 1963 under doubtful circumstances indicating that he had been fired.
The Bureau Chief found from his observation of Higgins and after hearing him testify that "when he answered the questions under paragraph 13 as he did, he did so deliberately with full knowledge of what the questions entailed hoping to get away with it * * *," and that Higgins was fully aware and conscious of what he was doing when he falsified his answers. He found also that appellant's "record in this case demonstrates a very serious defect in character and lack of moral stability," and that "he is not qualified on the basis of character to act as an agent * * *."
On this appeal Higgins argues that the revocation of registration for giving false answers to questions 13 (d), (g) and (h) was invalid because the questions themselves were illegal, and for the further reason that the answers given were not false. He contends that the Bureau's additional and alternative finding that he was not qualified on the basis of character is not supported by the record. He further asserts that even if the Bureau Chief's findings were allowed to stand, the penalty of revocation should be reduced.
We conclude that none of these contentions has merit and that the order appealed from must be affirmed.
A brief review of the pertinent provisions of the Uniform Securities Act in the light of its beneficent purpose clearly shows that the lack of substance to appellant's contention that questions 13 (d), (g) and (h) exceeded the authority of the agency. Security sales, because they may easily become the subject of great abuses upon the buying public, have long been the subject of governmental regulation both nationally and in this State. The area is a sensitive *272 one and therefore it is in the public interest to require those who deal in it as a business to meet high standards.
New Jersey has recently adopted the Uniform Securities Law which requires that all persons engaged in the sale of securities must register with the Securities Bureau by applying for a license, N.J.S.A. 49:3-56. N.J.S.A. 49:3-57(a) to (f) establishes a comprehensive registration plan. One of the determinations the Bureau Chief must make as to each applicant before a license may be issued is whether the applicant has suffered "any injunction or administrative order or conviction of a misdemeanor involving a security or any aspect of the securities business and any conviction of a high misdemeanor or felony." N.J.S.A. 49:3-57(a) (4). N.J.S.A. 49:3-58 enlarges that range.
N.J.S.A. 49:3-58(a) provides that the Bureau Chief may deny, suspend or revoke any registration granted under the act if he finds: "(1) that the order is in the public interest * * *," and that any one of several designated conditions exist. The pertinent provisions read:
"(2) that the applicant or registrant * * * (i) has filed an application for registration which as of its effective date, or as of any date after filing in the case of an order denying effectiveness, was incomplete in any material respect or contained any statement which was, in the light of the circumstances under which it was made, false or misleading with respect to any material fact;

* * * * * * * *
(iii) has been convicted of any crime involving a security or any aspect of the security business or any crime involving moral turpitude;

* * * * * * * *
(ix) is not qualified on the basis of such factors as character, training, experience and knowledge of the security business * * *." (Emphasis supplied)
We interpret these provisions of the statute to authorize the Chief of the Bureau to query applicants as to any kind of convictions which they may have suffered in courts as well as other governmental proceedings. Convictions certainly have a bearing on a determination as to the applicant's character. We see no justification for the argument *273 made by appellant that the Bureau must confine its inquiry to an applicant's conduct directly relating to the security business in searching for indicia of character and may not inquire concerning the applicant's life in general.
Nor do we find merit in the suggestion that appellant's privacy is improperly invaded by the questions posed. An applicant seeking admission to a licensed profession must expect that the licensing authority may legitimately inquire into those portions of his private life which affect the public interest and the exercise of the licensed profession among the public.
The Legislature had lodged in the Bureau the responsibility of determining whether the applicant's character is consistent with the trust placed in him by the issuance of the license. It would be extremely difficult, if not impossible, for the Bureau to perform that important function properly if the Bureau's inquiry were circumscribed in the manner contended for by appellant. We are satisfied that the questions were well within the statutory limits set by the Legislature.
The Bureau Chief's finding that appellant knowingly falsified the answers which he gave to 13 (d), (g) and (h) is amply supported by the record. Appellant makes the ingenious argument that the answers were not false because "in seeking admission to a civilian occupation [he] responded reasonably by tendering his civilian record." He urges further that the frame of reference for the application and questionnaire was the securities business and his mind was "channeled into that business" and he was "not thinking of military service." He argues that the terms "conviction," "felony" and "high misdemeanor" are drawn from civilian life and not found in military terminology and that they reflect the statutory language of legislators "aware of the dichotomy of civilian and military life."
We are not persuaded by these assertions. Appellant's own army record belies his claim that these terms are not used in military parlance, for reference is there made to his *274 "Court Martial Conviction." See also Article 52 of the Uniform Code of Military Justice, 10 U.S.C.A. § 852, where the term "convicted" is employed. But even assuming that appellant was justified in giving a negative answer to the questions regarding prior convictions, he could not have made the same error with respect to question 13(g) inquiring whether he had been "subject to any disciplinary action, past or pending, by any administrative, governmental or regulatory body." The questions are sufficiently clear to convey to anyone intelligent enough to act as a securities agent the nature of the information sought to be elicited.
The Bureau Chief who heard appellant's testimony expressly found that appellant knew what the questions entailed but deliberately answered them falsely, hoping his army background would escape detection. The record demonstrates that appellant had not forgotten these incidents of his military life. He further understood that the army was a "governmental body." He must have understood that the six courts martial he had had in his military career were "disciplinary actions" and that these resulted from violation of regulations.
In reviewing the action of the Bureau, this court must give weight to the opportunity of the hearer to observe appellant and judge the credibility of his testimony. Abeles v. Adams Engineering Co., 35 N.J. 411 (1961). Since there was substantial credible evidence to support his findings and conclusion, we must accept the determination of the administrative agency. This court may not substitute its own factual findings. Atkinson v. Parsekian, 37 N.J. 143 (1962). In re Commissioner of Banking v. Parkwood Co., 98 N.J. Super. 263 (App. Div. 1967).
Tested by the same criteria, we find no valid basis for disturbing the Bureau's further determination that appellant is unqualified on the basis of character to act as an agent to sell securities. One may agree with appellant's view that the requirement of character as a qualification for a public license "ought to be understood in terms of moral *275 stamina and purpose." But the record simply does not support the contention that "Higgins' record since the episode in Japan in 1956 is unexceptionable in moral terms." Nor does it necessarily demonstrate, as appellant proclaims, "an ability to stand straight in tough weather." Appellant's indiscretions in the army weigh against him, particularly the savage assault upon his fellow soldier which led to his dishonorable discharge. That aside, his willful falsehoods in the application recently made, aggravated by the fact that he did so under oath, must also be thrown into the scale along with his civilian record in gauging whether the balance has been tipped in his favor. The Legislature had lodged in the Bureau Chief the responsibility for making that assessment. Here again, we must defer to the presumption of expertness on the part of the administrative agency in the specialized field of knowledge concerned. Freud v. Davis, 64 N.J. Super. 242 (App. Div. 1960). A factor to be considered is the sensitive area involved.
It is no answer that appellant is currently earning a high salary. His present economic success does not convey any assurance of the possession or utilization of the traits envisioned by the statute. Nor is it any answer that appellant deals only with traders who would ostensibly be as sophisticated and experienced as he is. If licensed, this registration would entitle him to deal with the public; he could not properly be confined to that phase of the securities business involving traders alone, even if it were considered appropriate to do so.
Nor are we persuaded that appellant's position is improved by the fact that N.J.S.A. 49:3-58 (a) (iii) provides that if an applicant can show good character for the ten years preceding the application, even convictions of high misdemeanors shall not bar his licensing. The application itself directs that if the applicant's answer to item 13(a) is "yes," he is to state any facts showing that during the ten-year period his conduct warrants his registration notwithstanding the criminal conviction. Appellant said he read the entire *276 application. He was thus alerted to this ameliorative provision of the law. Rather than avail himself of this method of giving himself a clean slate, he chose to deceive and conceal in the hope, as the Bureau Chief found, that he would get away with it.
Finally, appellant makes the plea that even if he was properly found guilty of the transgressions charged, the penalty imposed is too harsh. The Bureau Chief is granted the discretionary power in N.J.S.A. 49:3-58 to "deny, suspend, or revoke any registration * * *." In this delicate discretionary area we should be loathe to substitute our judgment as a reviewing court for that of the Bureau Chief who heard the testimony of the applicant and had an opportunity to observe his demeanor. Where more than one result could have been permissible, and the agency has chosen one of them, we may not say the choice made was the wrong one, or that it was arbitrary, capricious or unreasonable. See United Hunters Ass'n of New Jersey, Inc. v. Adams, 36 N.J. 288 (1962).
Affirmed.