SHIVERS, Judge.
Harrison Porterfield appeals from a jury verdict finding him guilty of possession and sale of cocaine. Porterfield raises several issues in this appeal; however, because we conclude that the trial court reversibly erred in not granting Porterfield’s motion for a mistrial after the State referred to his failure to testify during opening and closing arguments, we find it unnecessary to discuss any of Porterfield’s other points of error. We reverse and remand for a new trial.
Porterfield’s arrest resulted from an investigation which the Escambia County Sheriff’s Department conducted in the spring of 1986. In March 1986, Larry Kersh, an undercover investigator with the Sheriff’s Department, established a relationship with Allen Williams and Randall Moton in hopes of procuring cocaine from them. On March 14, 1986, Moton told investigator Kersh, after Kersh had attempted to buy cocaine from him, that although he didn’t have any cocaine, he knew someone who did. Kersh, Moton, and another investigator, Wendell Hall, then met with Allen Williams. Williams, like Moton, had no cocaine, but said he knew where to find some. Kersh, Moton, Williams, and Hall drove to Porterfield’s home, and after arriving there, Williams got out of the car and began to walk toward Porterfield’s house. At the same time, Porterfield approached the car in which Williams had arrived, and the two met halfway in Porter-field’s yard. After Williams and Porter-field talked for three or four minutes, Williams, Porterfield, and Kersh decided to take Porterfield’s car in search of some cocaine. Porterfield evidently insisted that Hall not be permitted to accompany Kersh. Consequently, Hall and Moton waited in Porterfield’s yard for the others to return.
Porterfield, Williams, and Kersh eventually drove to a house on Fowler Avenue in Escambia County. Porterfield went unaccompanied to the house and returned without drugs. The three men then drove to an apartment complex in front of which Porterfield parked his car. Porterfield left the car and walked alone to another apartment building. Within five minutes, he returned with a small bag the contents of which later proved to be cocaine. The State filed charges against Porterfield on counts of possession and sale of cocaine.
*485 The issues in this case emanate from Porterfield’s decision to represent himself at trial. Before his trial began, Porterfield signed a waiver of counsel form and proceeded to trial pro se. The trial judge, however, instructed Elton Killam, the public defender assigned to represent Porter-field, to remain at Porterfield’s side throughout the trial. During his opening remarks to the jury, the State Attorney observed:
So, one other thing, one last thing I want to remind you in this opening statement, keep in mind is what I’m telling you is what I expect the evidence to be. If I make a mistake and it doesn’t turn out that way, you’ll have to decide the case on what the evidence was, not what I say. At the same time, if I say something wrong myself and I’m wrong about it, if you hear it differently from the witness stand, don’t think it’s questionable coming from the witness stand just because I said it wrong. I’m not a witness to the case. I’m just the prosecutor. And one last thing I would like to ask you to remember is that we have certain rules of court that, of course, I’ve been trained in and experienced in for ten years and I’m used to following those rules. And I know that Mr. Porterfield is not an attorney. He’s not a trained attorney. And I just ask you to keep in mind if I hold him to rules, I’m not picking on him. It’s just that it’s kind of automatic with me. I know these rules and I will object if he violates the rules of the court. And it’s not because I want to put him at a disadvantage. In fact, I think he has a tremendous advantage in being his own lawyer at the same time he’s the defendant, because he’s going to be able to tell you things as a lawyer that he won’t be saying that I can cross-examine, I can’t question. He will be saying them and I can’t question him, if he is not a witness. He’s his own lawyer. Keep that in mind while I tell you what I say is not evidence. What he says, in acting as his own lawyer, is not evidence either. It’s not evidence because it’s not said under oath and it’s not subject to cross-examination and questioning by the opposing attorney. So, anything he says, unless he’s a witness, you should not regard as evidence, but only argument as to whether or not it’s persuasive to you about the evidence.
After the State rested, Porterfield presented two witnesses and rested without taking the stand. The State then began its closing argument as follows:
MR. ALLRED: Thank you, Your Honor. Gentlemen, we will have ten minutes to argue the summation of the case. Mine is to be split up in half. Hopefully I’m going to take about five minutes now. Basically I just submit to you that what you have, in an effort to raise a reasonable doubt in this case, is nothing more than the unsworn to allegations of a man acting as his own lawyer and the testimony of two of his friends.
MR. PORTERFIELD: Your Honor, may you excuse the jury.
THE COURT: What’s the nature?
MR. KILLAM: Can we approach the bench, Your Honor?
(At the bench:
MR. KILLAM: Your Honor, on behalf of Mr. Porterfield, at this time, as an officer of the court, I feel it incumbent upon me to ask the Court for a mistrial of this cause based upon the statement of Mr. Allred that what the jury has before them is the unsworn statement of a man acting as his own attorney. That’s making reference to Mr. Porterfield’s right to remain silent.
THE COURT: I’d have to overrule that. MR. ALLRED: Because he’s acting as his own lawyer.
THE COURT: I know the nature of your objection, but I believe the circumstances would overrule it.
MR. KILLAM: I ask for a cautionary instruction to the jury.
THE COURT: Overruled.
Bench conference concluded.)
THE COURT: Go ahead.
Thereafter, the prosecutor finished the first segment of his closing argument, and Porterfield addressed the jury. The State made one objection during Porterfield’s *486 closing argument which occurred in the following context:
He could have got a warrant to search the apartment or bust the apartment. But he tell you they didn’t have time. Well, if they didn’t have time, and knowing this kind of drug come out of this apartment, that mean he could have sold you, your kids, anybody elses kid. He never charged sale or whoever supposed to be sold the drugs, they never went back to see if the drugs were there. This happened on March 14th. I was arrested June 4th.
MR. ALLRED: Judge, I don’t want him testifying unless he takes an oath.
THE COURT: Right. Sustained. Now, you can’t testify. Stay to the facts of the case.
MR. PORTERFIELD: All right. All right.
After Porterfield finished his closing argument, the prosecutor offered the following rebuttal:
He’s not illiterate on the law. He knows exactly what he’s doing. And the proof of that is that he stands up and tells you, I didn’t sell the drugs. In his closing argument, he didn’t sell the drugs. And he wanted to tell you that so bad, let him make it part of the evidence. Let him take an oath to tell the truth and make his denials and his statements and let me get up there and ask him.
MR. KILLAM: Your Honor, I would renew the motion.
THE COURT: Overruled. He’s participating.
MR. ALLRED: Let me ask you, Mr. Porterfield, on cross-examination what I've asked your other two witnesses. MR. KILLAM: Judge, I would ask you to caution Mr. Allred.
THE COURT: Don’t go too far.
MR. ALLRED: Let me put to test— MR. KILLAM: He’s doing it, Judge.
THE COURT: All right, Jerry, don’t go any further. I mean it.
MR. ALLRED: But he knows exactly what he’s doing. He’s not going to allow me the opportunity to cross-examine him.
MR. KILLAM: Judge, he’s continuing.
THE COURT: Mr. Allred, you keep that up you’re going to create a problem. It’s a touchy situation. It’s hard to balance it.
MR. ALLRED: My point is that he did not deny, he did not make the denials part—
MR. KILLAM: Your Honor.
THE COURT: Mr. Allred, how many times do I have to tell you.
MR. ALLRED: I’m going to go back to something I originally said that you allowed.
THE COURT: Let’s don’t get into that, and your time is up anyhow. Difficult.
MR. ALLRED: I know it’s awkward.
THE COURT: More than awkward.
MR. ALLRED: Right. So all I can do is ask you to consider the evidence in the case, gentlemen. And the evidence that’s worthy of belief, I submit to you, is the testimony of these officers. There’s no evidence that these officers are corrupt officers, that they did anything wrong in this case, that they overlooked any procedure in this case that applied to this type of case. This was not a buy-bust.
THE COURT: Time is up. Time is up.
Porterfield was convicted on counts of possession and sale of cocaine, and sentenced to five years imprisonment on each count. This appeal followed.
The State contends that Porterfield, by editorializing during his examination of witnesses and closing argument, was essentially testifying, and that therefore the prosecutor’s comments were not “fairly su-ceptible” of interpretation as commentary on Porterfield’s not having actually taken the witness stand. See State v. Marshall, 476 So.2d 150 (Fla.1985).[1] Put simply, the *487 State argues that Porterfield waived his right to remain silent by testifying during his pro se representation. Second, the State submits that even if the prosecutor’s remarks could be construed as commentary on Porterfield’s failure to testify, Porter-field invited any error by testifying throughout the trial without having taken an oath.
We find McClain v. State, 353 So.2d 1215 (Fla. 3d DCA 1977), instructive for purposes of the State’s first contention. McClain concerned, as does this appeal, a defendant who represented himself throughout his trial. In his closing argument, the defendant related facts to the jury which were not in evidence so that he appeared to be testifying, rather than arguing, his case. The prosecutor objected, and the trial court sustained the objection after admonishing the defendant that he could not testify, that he had had an opportunity to do so, but had failed to take advantage of it. The defendant argued on appeal that the trial court judge committed reversible error in commenting on his failure to testify. The Third DCA reversed even though the defendant had not objected contemporaneously to the trial court’s comments. Based on McClain, therefore, we think reversal is warranted in the instant case even though neither Porterfield nor Killam may not have contemporaneously objected at every instance where the State alluded to Porterfield’s not having testified. Our holding, however, does not rest solely on the authority of McClain because that decision was handed down several years before the Florida Supreme Court abandoned finding as per se reversible error prosecutorial comment on a defendant’s failure to testify, and adopted the federal approach of allowing such error to be curable under the harmless error rule. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).[2]
McClain, moreover, did not take up the issue of waiver, which the State specifically raises in this appeal. We are aware that a number of jurisdictions have found that once a defendant, in the course of representing himself, testifies as to matters not properly offered into evidence, he waives his 5th amendment protections thereby enabling the prosecutor to comment on the defendant’s unsworn testimony, while at the same time informing the jury that such testimony cannot be cross-examined. See Bontempo v. Fenton, 692 F.2d 954 (3d Cir.1982), cert. denied, 460 U.S. 1055, 103 S.Ct. 1506, 75 L.Ed.2d 935 (1983); Redfield v. United States, 315 F.2d 76 (9th Cir.1963); United States ex rel. Miller v. Follette, 278 F.Supp. 1003 (E.D.N. Y.), aff'd, 397 F.2d 363 (2d Cir.1968), cert. denied, Miller v. Follette, 393 U.S. 1039, 89 S.Ct. 660, 21 L.Ed.2d 585 (1969); Jones v. State, 381 So.2d 983 (Miss.), cert. denied, 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1980); State v. Schultz, 46 N.J. 254, 216 A.2d 372 (N.J.1966); State v. Polk, 5 Or. App. 605, 485 P.2d 1241 (Or.Ct.App.1971); State v. Johnson, 121 Wis.2d 237, 358 N.W.2d 824 (Wis.Ct.App.1984), review denied, 122 Wis.2d 783, 367 N.W.2d 223 (Wis. 1985); but see United States v. Curtiss, 330 F.2d 278 (2d Cir.1964) (defendant did not waive his constitutional right not to testify against himself where he referred to facts outside record during pro se summation, and thus prosecution was not entitled to disregard admonition against comment concerning defendant’s failure to testify); and Note, Criminal Law — Privilege Against Self-Incrimination — Comment on Failure of Accused Appearing Pro Se to Testify, 38 Temple L.Q. 102 (1964) (criticizing result reached in Curtiss). We think the facts of these decisions are distinguishable from those of the instant case in a significant way: in all of the foregoing cases, the defendant actually solicited the prosecutor’s remarks by offering unsworn *488 testimony. By contrast, the prosecutor in the case at bar began alluding to Porter-field’s decision not to testify during his opening statements to the jury. Porter-field had not yet addressed the jury, and therefore could not have solicited the prosecutor’s remarks. As our exposition of the facts reveals, Porterfield, during his closing statement to the jury, did offer, albeit briefly, what could be considered testimony as to his innocence. But Porterfield’s remarks came after the prosecutor, in his closing argument, had again referred to Porterfield’s failure to testify. The prosecutor’s second reference to Porterfield’s silence — like his first — was unsolicited and therefore unnecessary to remedy any advantage Porterfield might have gained had he actually instigated the prosecutor’s remarks through his unsworn statements.[3]
In State v. Marshall, the Florida Supreme Court held that if a prosecutor’s comments are fairly susceptible of being interpreted as referring to a defendant’s failure to testify, error has occurred. The court continued that “[sjuch a comment, however, should be evaluated according to the harmless error rule, with the State having the burden of showing the comment to have been harmless beyond a reasonable doubt.” 476 So.2d at 153. In State v. DiGuilio, the court determined that the State, as beneficiary of the error, must “prove beyond reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, there is no reasonable possibility that the error contributed to the conviction.” This requires “examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition, an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.” Id.
The State’s recurring references to Porterfield’s not having testified are “fairly susceptible” as commentary on his not having testified. See David v. State, 369 So.2d 943 (Fla.1979) (determining that prosecutor’s remarks and closing argument which queried ‘why didn’t he [the defendant] say anything about’ certain specified transactions were fairly susceptible of interpretation by the jury as referring to the defendant’s failure to testify). As to the question of whether the prosecutor’s remarks were harmless, we are sufficiently impressed by the State’s repeated indications to the jury not once, but on three different occasions, that Porterfield had not testified as to find that the error involved was harmful, rather than harmless. Porterfield is entitled to a new trial.
REVERSED and REMANDED.
THOMPSON and ZEHMER, JJ., concur.

. Prosecutorial comment on a criminal defendant’s failure to testify is forbidden under Florida Rule of Criminal Procedure 3.250 which states: “In all criminal prosecutions the accused may at his option be sworn as a witness in his own behalf, and shall in such case be subject to examination as other witnesses, but no accused person shall be compelled to give testimony *487 against himself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his own behalf, and a defendant offering no testimony in his own behalf, except his own, shall be entitled to the concluding argument before the jury."

. For a thorough analysis of DiGuilio which also traces the development of the per se reversal rule in Florida, see Note, Florida Reverses Its Per Se Reversal Rule On Improper Prosecutorial Comment On A Defendant’s Rights To Remain Silent, 13 Fla.St.U.L.Rev. 1118 (1986).

. The foregoing analysis also dispenses with any allegations of invited error. The invited error rule holds that a defendant may not make or invite comment and later seek reversal based on such comment. See Clark v. State, 363 So.2d 331 (Fla.1978). Because it was the State, rather than Porterfield, which initially referred to Port-erfield’s failure to take the stand in every instance where the subject was brought to the attention of the jury, the doctrine of invited error does not apply to the prosecutor’s remarks. We also note that some jurisdictions have refused to apply the invited error rule in instances where acceptance of the invitation to error exceeds the scope of the offer itself. Jackson v. State, 633 S.W.2d 598 (Tex.App. 1982). Our refusal to find invited error based on the instant facts is not, however, reliant on such a principle for reasons already stated.