288 N.J. Super. 69 (1996)
671 A.2d 1080
LEONARD B. GREER AND L.C. WEGARD & CO., INC., PLAINTIFFS-RESPONDENTS/CROSS-APPELLANTS,
v.
NEW JERSEY BUREAU OF SECURITIES AND A. JARED SILVERMAN, CHIEF, BUREAU OF SECURITIES, DEFENDANTS-APPELLANTS/CROSS-RESPONDENTS. LEONARD B. GREER AND L.C. WEGARD & CO., INC., PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY BUREAU OF SECURITIES AND A. JARED SILVERMAN, CHIEF, BUREAU OF SECURITIES, DEFENDANTS-APPELLANTS. IN THE MATTER OF LEONARD B. GREER AND L.C. WEGARD & CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, REGARDING THE ENFORCEMENT OF SUBPOENAS NUMBER 1622, 1623 AND 1723 OF THE NEW JERSEY BUREAU OF SECURITIES.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1995.
Decided February 29, 1996.
*72 Before Judges KING, KLEINER and HUMPHREYS.
Joshua T. Rabinowitz, Deputy Attorney General, argued the cause for the appellants/cross-respondents (Docket Number A-557-94T3 and A-14-94T3) (Deborah T. Poritz, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Mr. Rabinowitz, on the brief).
Sandra Levy, Deputy Attorney General, argued the cause for the appellants/cross-respondents (Docket Number A-308-95T5) (Deborah T. Poritz, Attorney General of New Jersey, attorney; Ms. Levy, on the brief).
Jerome M. Selvers argued the cause for respondents/cross-appellants (Sonnenblick, Parker & Selvers, attorneys; Mr. Selvers, Mark S. Vincent, and Chad N. Cagan, on the brief).
The opinion of the court was delivered by HUMPHREYS, J.A.D.
These appeals[1] stem from the issuance by the New Jersey Bureau of Securities ("Bureau"), of subpoenas duces tecum on Leonard B. Greer ("Greer") and L.C. Wegard and Co., Inc. ("Wegard"). The subpoenas were issued in connection with the Bureau's investigation of possible violations of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 to -76.
Greer and Wegard filed an action in the Superior Court Law Division to enjoin the Bureau from enforcing the subpoenas and related administrative orders. They alleged that the subpoenas were overly broad and were issued in bad faith in order to harass them. Judge Cass conducted a plenary hearing and, on July 25, 1994, entered a judgment in which she modified and enforced the subpoenas. The Bureau appealed. Greer and Wegard cross-appealed (Docket No. A-14-94T3).
*73 Judge Cass also entered an order on August 31, 1995 sanctioning the Bureau for violating a sealing order. The Bureau appealed. Greer and Wegard cross-appealed. (Docket No. A-308-95T5).
As to the subpoenas, the Bureau contends that the judge erred by (1) granting a plenary hearing; (2) failing to enter a directed verdict at the end of plaintiffs' case; (3) finding that the telephone toll records were not subject to the subpoenas; (4) eliminating non-business communications from the subpoenas; and (5) failing to sanction plaintiffs for resisting compliance with the subpoenas without any justification.
Plaintiffs contend on their cross-appeal that the judge erred by: (1) refusing to deny enforcement of the subpoenas; (2) enforcing provisions of the subpoenas that were over-broad and burdensome; (3) enforcing administrative orders issued without statutory authority and in bad faith; and (4) denying any prehearing discovery.
As to the sanction order, the Bureau contends that it did not violate any court orders and should not have been sanctioned. Plaintiffs cross-appeal from the judge's denial of counsel fees incurred by them in their appellate applications to enforce the sealing order.
We have thoroughly reviewed this voluminous record and carefully considered the arguments of counsel. We hold: (1) the subpoenas are enforceable without modification; and (2) the Bureau did not willfully violate the sealing order and should therefore not be sanctioned.

I
Greer is the managing director and sole stockholder of Wegard, a licensed security broker and dealer whose headquarters is in New York City. Wegard is registered with the Bureau as a securities broker dealer. Greer acquired Wegard in September of 1991. Before that, Wegard's primary business was investment *74 banking. After Greer's acquisition, Wegard's primary business became the sale of over the counter securities to the public. Several of these securities are the subject of other investigations by the Bureau, in particular an investigation of security dealings by Robert E. Brennan ("Brennan").
As part of its continuing investigations, the Bureau on July 17, 1992, served subpoenas duces tecum on Greer and Wegard. Schedule A, attached to the subpoenas, required production of several categories of writings as follows: (1) telephone toll records for two numbers from July 1, 1991; (2) records pertaining to an account for Greer's wife at First Philadelphia Corporation from January 1, 1989; (3) records of activity involving Fish Funding Corporation and Arthur Fishbein; (4) and (5) records of all communications with twelve specified persons or entities from April 1, 1991; (6) research reports relating to recommendations made by Wegard agents; and (7) all books and records of accounts and minutes of the proceedings of the shareholders, board and executive committee of Wegard, since September 1, 1991.
Greer had been subpoenaed earlier. He testified three times before the Bureau and answered all questions posed to him. However, he did not comply with these two subpoenas. Instead, on July 27, 1992, Greer filed in the Superior Court a verified complaint against the Bureau, demanding that the Bureau provide copies of Greer's prior deposition testimony. That case was resolved in the Bureau's favor by our decision on June 17, 1994, in which we concluded that witnesses were not entitled to unconditional release of transcripts of their testimony in Bureau investigations.
On January 20, 1993, the Bureau issued administrative orders to Greer and Wegard to produce certain records for three accounts which had been identified in the prior subpoenas. The records were itemized telephone toll records of Cellular One, a cellular phone company.
On January 25, 1993, Greer and Wegard filed an action in the Superior Court against the Bureau and the Chief of the Bureau *75 seeking to enjoin enforcement of the subpoenas and administrative orders. Plaintiffs contended that they had already provided all records responsive to the subpoenas and orders, other than personal documents unrelated to the business of Wegard or Greer. Plaintiffs also contended that service was defective, that the document demands were overbroad, vague and burdensome, and that an immediate court hearing was needed to prevent irreparable harm.
On January 27, 1993 the Bureau served a Superior Court subpoena duces tecum on Cellular One, seeking telephone records that were included in the prior subpoena demands. The records were produced to the court and sealed.
On February 3, 1993, the defendants filed an answer and verified counterclaim seeking enforcement of the subpoenas and orders, and also sanctions for non-compliance. A dispute over whether jurisdiction resided in the Law Division or the Appellate Division was resolved when the Appellate Division on June 8, 1993, granted defendants' motion to return the complaint and the counterclaim to the trial court for disposition.
Plaintiffs subsequently sought to take depositions and obtain documents. Plaintiffs argued that the subpoenas had been issued in bad faith and not for any lawful purpose but only to harass and injure them. On October 1, 1993, Judge Cass held that plaintiffs were entitled to a hearing on whether the subpoenas should be enforced. She denied pre-hearing discovery.
Extensive hearings were held between October 18, 1993 and January 5, 1994. On June 16, 1994, Judge Cass issued a comprehensive opinion. She found that the Bureau was investigating trading activity by Wegard in approximately twenty different securities where there was indication of fraud, stock manipulation, or abusive sales practices. Further, she found that the investigations had been undertaken in accordance with N.J.S.A. 49:3-68(a). She pointed out that:
Plaintiffs are engaged in the business of selling securities. The securities industry is certainly subject to pervasive and long standing regulation on both the *76 state and federal levels. This system of regulation is based largely on compulsory disclosure by those engaged in the industry of relevant information to the various regulatory agencies. As such, there can be no reasonable expectation of privacy regarding any business records related to this heavily regulated industry.... [n]o matter how tangential that relationship may be.
Consequently, she held that with respect to the business items, the subpoenas were enforceable.
However, Judge Cass modified the subpoenas by limiting the demand for toll records of two telephone numbers to the aggregate amounts paid, omitting the numbers called. These two telephone numbers were used by Greer for both business and personal calls.
She also limited the scope of the documents demanded in paragraphs 4 and 5 of Schedule A to business communications with the named persons and entities. She reasoned that Greer's right to privacy as guaranteed by the New Jersey Constitution precluded the subpoenaing of his personal telephone toll records except for the billing totals. In addition, she found that the demand for all communications with twelve identified persons or entities was unduly broad and she restricted that demand to business communications.
She also concluded that representatives of the Bureau had taken some improper actions during the investigation, including a leak of confidential information to a magazine writer. She said that the Bureau representatives in some cases served subpoenas on witnesses in an inappropriate manner in that the representatives were aggressive, rude and poorly dressed. However, she found that considering the totality of the circumstances, the administrative process had not been abused and the investigation was being undertaken for a proper purpose.
Judge Cass also found that the Bureau should have, but had not, promulgated rules and regulations concerning its investigations. She declined to strike the subpoenas on that ground. She said that to strike an administrative subpoena because the Bureau had not "fulfill[ed] its mandate," was beyond her jurisdiction. She *77 also declined to enjoin securities dealings by the plaintiffs pending compliance with the subpoenas.
On July 25, 1994, a judgment was entered. The judgment provided that the subpoenas, as modified, would be enforced. Judge Cass also stated in the judgment that both sides, with some exceptions, had proceeded in good faith. An open issue, the subpoenaing of the bank records of Greer's wife, was resolved by the Bureau withdrawing that demand. Plaintiffs subsequently informed the Bureau that they had produced all the documents responsive to the demands of paragraphs 4 and 5 of Schedule A of the subpoenas.

II
Judge Cass correctly found that this investigation was for a proper purpose and that the Bureau in conducting the investigation did not abuse its investigatory powers. The securities area "is a sensitive one, open to great abuses and therefore subject to careful governmental regulation to assure that those who engage in a business meet high standards in the interest of protection of the public." Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973). See also State v. Russell, 119 N.J. Super. 344, 351, 291 A.2d 583 (App.Div. 1972); Higgins v. New Jersey Bureau of Securities, 100 N.J. Super. 266, 271-72, 241 A.2d 660 (App.Div. 1968). The Bureau has broad powers in order to fulfill "its responsibility to protect the investing public against fraud or misrepresentation." Data Access Systems, Inc. v. New Jersey Bureau of Securities, 63 N.J. 158, 168, 305 A.2d 427 (1973). This broad investigative power of the Bureau expressly extends to the issuance of subpoenas and subpoenas duces tecum. N.J.S.A. 49:3-68; N.J.S.A. 49:5-7a. See also Silverman v. Berkson, 141 N.J. 412, 432, 661 A.2d 1266 cert. denied, ___ U.S. ___, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995) (the Bureau's subpoena power may even, in an appropriate case, extend to out of state witnesses).
The investigation in this case concerns allegations of a major continuing fraud upon the public. One aspect is whether a much *78 investigated figure in the security industry, Brennan, was an undisclosed principal of Wegard. The Bureau contends that persons and entities associated with Brennan were involved in setting up and financing Greer's purchase of Wegard. The Bureau alleges there is "a web of relationships among various people suggesting that ... [plaintiffs] may be involved in a scheme to dominate and control the markets in some of the securities that the Bureau was investigating."
Under these compelling circumstances, the Bureau has a duty to investigate vigorously and thoroughly in order to stop any continuing fraud upon the public. The Bureau has since filed a voluminous complaint in the Superior Court Chancery Division charging Greer, Wegard, Brennan and others with massive fraud in the sale of securities to the public involving millions of dollars.
Federal cases have upheld broad investigatory powers by the federal regulatory agency in the securities field, the United States Securities Exchange Commission ("SEC"). The SEC has expansive powers to issue and seek enforcement of subpoenas. Securities and Exchange Commission v. Jerry T. O'Brien, Inc., 467 U.S. 735, 743, 104 S.Ct. 2720, 2726, 81 L.Ed.2d 615, 622 (1984). The SEC need not meet any standard of probable cause in order to obtain enforcement of its subpoenas. See U.S. v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 119-120 (1964). Once the SEC has met the normal statutory prerequisites for enforcement, the opponents of the subpoena have a heavy burden if they seek "denial of enforcement on the ground that the subpoena is sought for an invalid purpose." Securities and Exchange Commission v. Knopfler, 658 F.2d 25, 26 (2nd Cir.1981), cert. denied, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 446 (1982); See also Securities and Exchange Commission v. Wheeling-Pittsburgh Steel Corp., 648 F.2d 118, 128 (3rd Cir.1987).
SEC subpoenas may be challenged on an appropriate ground and the court may inquire as to the underlying reasons for the subpoena. This is because in enforcing a subpoena, the court may *79 not permit its process to be abused. See U.S. v. Powell, supra, 379 U.S. at 58, 85 S.Ct. at 255, 13 L.Ed.2d at 120.
However, challenges to an SEC subpoena are restricted in order to minimize "the risk that customers' objections to subpoenas will delay or frustrate agency investigations." Securities and Exchange Commission v. Jerry T. O'Brien, Inc., supra, 467 U.S. at 745, 104 S.Ct. at 2727, 81 L.Ed.2d at 624. In securities investigations "speed in locating and halting violations of the law is so important ... [that a court should] be loathe to place ... weapons in the hands of persons with a desire to keep the Commission at bay." Id. at 751, 104 S.Ct. at 2730, 81 L.Ed.2d at 627. Subpoena enforcement proceedings should not be delayed "while parties clash over, and judges grapple with, the thought processes of each investigator...." See U.S. v. LaSalle National Bank, 437 U.S. 298, 315, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221, 235 (1978) (footnote omitted).
Whether certain activities are subject to SEC regulations should not be decided in a subpoena enforcement action. The SEC "must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority." Securities and Exchange Commission v. Brigadoon Scotch Distributing Co., 480 F.2d 1047, 1052-53 (2nd Cir.1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974); Securities and Exchange Commission v. Howatt, 525 F.2d 226, 230 (1st Cir.1975).
The above decisions regarding the SEC are generally applicable to the Bureau, an agency whose investigative functions and authority are similar to the SEC. We are satisfied that the Bureau's investigation here and its issuance of subpoenas and administrative orders were well within its authority and clearly warranted.

III
Judge Cass limited the subpoenas to business communications. She reasoned that the Bureau did not have the statutory *80 authority to require the production of non-business documents. We disagree.
The subpoenas in this case included:
4. For the period of April 1, 1991 to the present all writings which relate to or are communication between Leonard Greer and L.C. Wegard & Co. Inc. and/or the following persons:
 Robert E. Brennan
 Robert Berkson
 Roger Barnett
 First Jersey Securities Inc.
 Austin Bernet
 Due Process Stables Inc.
 Eric Lipetz
 Randy Pace
 John Dell
 Michael Hart
 Sean Hart
 Alvin Abrams
5. This request includes all writings sent or received by FAX transmission, all notes or memos of conversation, all writings sent or received in person or through mails or any other carrier, all diaries and logs of conversation, all correspondence and all other writings that relate to communications with the aforenamed.
An administrative subpoena must be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome...." Greenblatt v. New Jersey Bd. of Pharmacy, 214 N.J. Super. 269, 275-76, 518 A.2d 1116 (App.Div. 1986) (quoting See v. Seattle, 387 U.S. 541, 544-45, 87 S.Ct. 1737, 1739-40, 18 L.Ed.2d 943, 947 (1967)). The subpoenas here are limited by time and to twelve identified persons. In Securities and Exchange Commission v. Arthur Young & Co., 584 F.2d 1018, 1022 (D.C. Cir.1978), cert. denied, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979), the subpoena was for fourteen categories of documents pertaining to twenty-nine individuals and entities and all principals of a particular corporation over a six year period. The court found this demand relevant and not an excessive burden. See id. at 1031.
A licensing agency may legitimately inquire into those portions of an investigated person's private life which affect the public interest. Higgins v. New Jersey Bureau of Securities, 100 *81 N.J. Super. 266, 273, 241 A.2d 660 (App.Div. 1968). Here, the Bureau contends that the plaintiffs and others have engaged in widespread and continuing major frauds upon the public. This clearly requires a wide ranging and comprehensive investigation. We reverse the portion of the order which limits the demands to business communications.

IV
The judge ruled that the Bureau was constitutionally barred from obtaining Greer's personal telephone toll records without a search warrant based on probable cause. The judge relied on State v. Hunt, 91 N.J. 338, 344-47, 450 A.2d 952 (1982), which held that there was a sufficient expectation of privacy in telephone toll billing records to require a warrant before such records could be seized. Reliance on State v. Hunt is misplaced. In that case, the police went to the offices of the New Jersey Bell Telephone Company and obtained a defendant's home toll billing records without a warrant. Id. at 341, 450 A.2d 952. The Court concluded that "the police wrongfully obtained the toll billing records ... in that they were procured without any judicial sanction or proceeding." Id. at 348, 450 A.2d 952.
In the present case, the Bureau did not make a warrantless seizure. The Bureau issued a subpoena. "A subpoena is simply `a command to appear at a certain time and place to give testimony upon a certain matter.'" Silverman v. Berkson, supra, 141 N.J. at 422, 661 A.2d 1266. Subpoenas are much less intrusive than searches and seizures. No physical search is involved. The party subpoenaed has an opportunity before compliance to apply to quash or modify the subpoena. See Wayne R. LaFave, Search and Seizure, § 4.13(b) at 745-46 (3d ed. 1996).
In Donovan v. Lone Steer, Inc., 464 U.S. 408, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984), the United States Supreme Court held that an administrative subpoena does not constitute a nonconsensual entry into a private place. The New Jersey Supreme Court reached the same conclusion in State v. Schultz, 46 N.J. 254, 261, 216 A.2d 372, *82 cert. denied, 384 U.S. 918, 86 S.Ct. 1367, 16 L.Ed.2d 439 (1966). As stated in 2 Am.Jur.2d Administrative Law, § 137 (1994): "No warrant is required as a predicate to an administrative subpoena which does not involve efforts of governmental personnel to make nonconsensual entries into areas not open to the public...." See also Kenneth Culp Davis and Richard J. Pierce, Jr., 1 Administrative Law Treatise, § 4.2 at 141-43 (3d ed. 1994); Romualdo P. Eclavea, Annotation, The Supreme Court and Administrative Subpoenas, 78 L.Ed.2d 940 (1985).
As Chief Justice Weintraub pointed out in In re Addonizio, 53 N.J. 107, 118, 248 A.2d 531 (1968), what is unreasonable under the Fourth Amendment to the United States Constitution "in the case of a Search and Seizure is not the measure of what is `unreasonable' in the case of the subpoena duces tecum; that the `probable cause' required for a search or arrest is very different from the `probable cause' required to support the subpoena; and that the specificity required of a search warrant is not applicable to it." See also State v. Schultz, supra, 46 N.J. at 261, 216 A.2d 372.
Thus, there are no constitutional bars to the issuance of a subpoena duces tecum for telephone toll billing records. Here, the information sought through the subpoenaing of the toll records is relevant to the investigation. Furthermore, the allegedly nonbusiness telephone tolls were paid for by Greer's company. This makes it likely that business as well as personal calls were involved. We reverse that portion of the order excising "personal" telephone tolling records from the subpoenas.

V
The Bureau contends that the judge should not have ordered a plenary hearing. The issue is now moot because the plenary hearing has already taken place. We will therefore not decide the issue. We add, however, that subpoena enforcement proceedings should ordinarily not be encumbered by plenary proceedings. The court is authorized by statute to proceed in such matters in a summary manner or otherwise. N.J.S.A. 49:3-68(c); see also R. *83 4:67-6 and R. 1:9-6. "Otherwise" should be the exception not the rule. Investigations in the sensitive areas of sales of securities to the public must not be impeded by undue delay in the courts. See Securities and Exchange Commission v. Knopfler, supra, 658 F.2d at 26 (an evidentiary hearing is not required absent a "meaningful and substantial factual showing"); see also U.S. v. McCarthy, 514 F.2d 368, 373 (3rd Cir.1975). The public interest in this highly sensitive area requires courts to expedite the resolution of challenges to Bureau investigations.

VI
The judge sanctioned the Bureau for violating an order sealing the record. The judge found that the Bureau "filed the sealed documents on one occasion and then attempted to file the sealed documents on the second occasion"; that the "Bureau's conduct" required two emergent applications to the Appellate Division to "preserve the integrity" of the court's sealing order; and that the Bureau "chose to willfully disobey" the order.
The judge held that the Bureau had violated litigants' rights and awarded Greer and Wegard reasonable attorney fees and expenses pursuant to R. 1:10-3. The judge later modified the order by eliminating any counsel fees in connection with plaintiffs' applications to the Appellate Division. She correctly ruled that the trial division should not award counsel fees for services rendered in the Appellate Division. See Tooker v. Hartford Accident and Indemnity Co., 136 N.J. Super. 572, 578, 347 A.2d 371 (App.Div. 1975), certif. denied, 70 N.J. 137, 358 A.2d 184 (1976).
We are satisfied that the Bureau did not willfully violate the sealing order. The record and hearings were not sealed initially. After the hearings had been completed, but before the judge had rendered a decision, the Bureau, on May 19, 1994, filed a motion seeking among other things to have the judge draw an adverse inference against Greer by reason of his refusal on self incrimination grounds to answer questions before the SEC. Greer and Wegard filed a cross-motion to seal the Bureau's May 19, 1994 *84 motion. The judge entered a temporary sealing order and later, on August 15, 1994, a final sealing order. The temporary order provided that the Bureau's motion, the record of the proceeding on the motions, and the plaintiffs' response would be sealed until further order of the court. The final order provided that the motion and certain transcripts would "continue to be sealed."
The Bureau, on September 29, 1994, filed a notice of appeal from the final sealing order. In an accompanying letter of that date to the Clerk of the Appellate Division, the Deputy Attorney General representing the Bureau stated that the appeal was from a sealing order and that "[t]he Appellate Division may want to consider whether the record relating to the sealing issue should be sealed pending its decision on that issue." A copy of the letter was sent to counsel for plaintiffs. No response to the letter was received from the clerk or counsel for the plaintiffs.
On October 27, 1994, the Bureau submitted its brief and appendix for filing with the Clerk of the Appellate Division. Plaintiffs then made an emergent application to the Appellate Division to seal the record. We sealed the record on appeal and by an order entered October 28, 1994, directed that the "record on appeal is impounded pending a final disposition or some other order entered by this court." Later, by order dated September 28, 1995, we vacated the impoundment and also all other sealing and impoundment orders before us including the sealing orders of Judge Cass.
On October 31, 1994, the Bureau advised counsel for Wegard and Greer by letter that the Bureau intended to file an action against Greer and Wegard in the Superior Court Chancery Division. The Bureau said that the action would include the transcript that had been sealed and that the Bureau did not intend to submit its new papers under seal. A copy of the letter was sent to Judge Simon of the Essex County Chancery Division. The Bureau's position in this letter was that the prior sealing order did not prevent it from using the transcript and its contents in another proceeding.
*85 Counsel for Greer and Wegard, by letter to the Bureau dated November 1, 1994, argued that it was unlawful for the Bureau to file the transcript publicly in the new action. A copy of that letter was sent to Judge Simon. Later that day, the Bureau submitted a verified complaint, brief and appendix for filing with Judge Simon. In a letter to Judge Simon accompanying the submission, the Bureau set forth its position as follows: One of the documents in the submission was a March 16th transcript that had been sealed in the prior proceeding. In the Bureau's appeal in that proceeding, the Appellate Division had impounded the appellate record. The sealing order did not, the Bureau argued, prevent the Bureau from filing publicly the document previously sealed. The Bureau maintained that after the Bureau's May 19, 1994 motion had been filed, the transcript had become a public record because it was "available to the public pursuant to a Freedom of Information Act request. 5 U.S.C.A. § 552."
The Bureau also informed Judge Simon in the letter that counsel for Greer and Wegard disagreed with the Bureau's interpretation; that the position of Greer and Wegard was that the Bureau was required to file the transcript under seal in the first instance and then move to unseal the record. The Bureau advised Judge Simon in the letter that if he agreed with Greer and Wegard's position, the Bureau would move to unseal the record, and that "[i]n any case, the court must determine whether filing under seal is appropriate in light of the changed circumstances." A copy of the Bureau's letter was sent to counsel for Greer and Wegard.
Greer and Wegard thereupon made an oral ex parte application to the Appellate Division to seal the papers filed with Judge Simon. A judge in the Appellate Division allegedly indicated in an unrecorded telephone conference that the March 16th transcript should be filed under seal in the new proceeding. A subsequent order was entered by Judge Simon sealing the papers filed with him. Later, Greer and Wegard filed a motion with Judge Cass to *86 hold the Bureau in contempt for allegedly violating the sealing order.
We find no contempt or willful disobedience by the Bureau. We do not necessarily agree with the Bureau's actions. The Bureau could have withheld the filing of the transcript until a court ruling had been obtained. This would have been a safer and wiser course of action. However, under all the circumstances, we do not consider the Bureau's conduct a willful violation of the sealing order. The Bureau was not specifically prohibited by the sealing order from filing or using any of the records in a new action or on appeal. The Bureau gave opposing counsel advance notice on both occasions. The Bureau also advised in advance the clerk of the Appellate Division and Judge Simon that a transcript the Bureau intended to file had been sealed in another proceeding. This advance notification is inconsistent with any flouting of Judge Cass's order.
Further, the Bureau's legal position regarding the sealing order was not without merit. We concluded in our order of September 28, 1995, vacating the sealing order that Greer and Wegard had clearly not met their burden of showing that their interest in secrecy outweighed the presumption of public access to documents and materials filed in a court in connection with civil litigation. See Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 375, 662 A.2d 546 (1995). Thus, the record should not have been sealed at all.
Considering all the circumstances, a sanction is not warranted. We find no illegal, oppressive or wrongful conduct by the Bureau in this case which would justify the Bureau's being required to pay the counsel fees of opposing parties.

VII
The Bureau contends that Greer and Wegard's refusal to comply with the subpoenas was without justification and for purposes of delay. The Bureau argues that the judge should have enjoined plaintiffs pursuant to N.J.S.A. 49:3-68(c), "from engaging *87 in the securities business from and within New Jersey until they comply and the Bureau completes its investigation." Judge Cass found that Greer and Wegard acted in good faith in challenging the Bureau's subpoenas, and she denied the Bureau's application.
Plaintiffs had a right to seek relief in the courts. Their legal arguments were not frivolous. We find no basis for disturbing Judge Cass's ruling. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974).
In sum, the subpoenas are enforceable without modification. The sanction against the Bureau is vacated.
Affirmed in part and reversed in part.
NOTES
[1] The three above captioned appeals have been consolidated for the purposes of this opinion.